DWIGHT FOSTER & others, trustees, *vs.* CITY OF BOSTON.

Suffolk. Nov. 18, 1880; May 5. — June 29, 1882. C. ALLEN, J., absent.

A corporation, having large tracts of unimproved lands, for the purpose of borrowing money to discharge existing liens upon the lands and to make them available for sale, issued bonds, the interest on which was payable semiannually, and, as security for the payment of principal and interest, conveyed its lands to trustees on the following trusts : 1. To permit the corporation to remain in possession, improve and sell the lands, until default should be made in the payment of the bonds, or the interest thereon. 2. To release from time to time from the lien created by the conveyance such portions as, in the opinion of the trustees and of the president of the corporation, might be safely released without impairing the security for the payment of the bonds. 3. To receive and invest the moneys received from the proceeds of sales of said lands, and to pay therefrom interest due on the bonds and the expenses of the trust, and to apply the residue to the purchase and cancellation of the bonds. The deed further provided, that, in case default should be made in the payment of the bonds or of the interest thereof, and for six months thereafter, all the bonds should become payable; that the trustees then might, and, upon the request of a certain number of the holders of the bonds, should, enter and take possession of the granted premises, and should thereafter, as attorneys of the corporation, so long as the default should continue, so manage and dispose of the same as to carry out the purposes of the trust, by sales of the lands from time to time. The corporation covenanted that, in case of default continuing for six months, it would on the request of the trustees deliver up possession of the granted premises, and make any further conveyance required. *Held,* that until entry by the trustees on default in the payment of the principal or interest of the bonds, they had no power to make a contract to sell any portion of the lands.

W. ALLEN, J. This is a bill in equity in which the plaintiffs allege that, as trustees under a deed from the Boston Water Power Company, they made a contract to sell a parcel of the land conveyed to them by the deed ; that the contract purchaser refuses to accept a deed, on the ground that the plaintiffs cannot give a clear title by reason of a right in the land given by the corporation, the Boston Water Power Company, to the defendant, prior to the deed to the plaintiffs. The plaintiffs further allege that they took their deed without notice of the defendant's right, and are not bound by it, on the ground that the deed to the defendant, although recorded in the registry of deeds, was not acknowledged; and they ask for a decree that the defendant release it.

If the contract was entered into by the plaintiffs as trustees, by virtue of the authority given to them by the deed of trust,

they may be entitled to the relief sought; but if they have not authority to make the contract or to convey the land, or if the contract was made in behalf of the corporation, and the sale would be under its authority and for its benefit, they show no title to such relief.

The deed is in the form of an indenture between the Boston Water Power Company, a corporation, of the first part, and a party of the second part as trustees, whose successors in the trust the plaintiffs are. It recites that the party of the first part, being possessed of large tracts of land in the Back Bay, so called, in Boston, and being in need of money for the purpose of improving the lands and making them available for sale, and for paying its indebtedness and discharging liens existing upon the lands, proposes to borrow money upon the security of the lands, and for that purpose to issue bonds to the amount of $2,800,000, to be authenticated by a certificate signed by the party of the second part as being secured by the indenture. It next recites the disposition to be made of the bonds; the larger part of which are to be delivered by the corporation to the trustees, to apply, so far as needed, upon certain specified liabilities, and all not used for that purpose to be returned to the corporation; the remainder of the bonds to be applied to the payment of other debts of the corporation, and the discharge of liens on its property, and then to improving, managing and disposing of the lands, to the expenses of the trust, and the general wants of the corporation. After the recitals, the indenture, "to the end that the punctual payment of the bonds so issued, and of the interest thereon, as and when the same shall become due, may be secured, and in consideration of one dollar paid by the party of the second part," conveys the land to them in fee simple, to hold "in trust for the intents and purposes and upon the trusts following." The trusts declared, until default in the payment of the bonds, in effect give to the corporation the same possession and control of the land, and the right to improve and develop and to sell and convey it, and to dispose of the avails of it, as if the indenture had not been made, except as limited by the provision that the trustees shall release from time to time from the lien created by the indenture such portions of the land as, in their opinion and that of the president of the corporation, may

be released without impairing the security, or if those parties do not agree as to what lands shall be released, that question may be determined by the treasurer of the Commonwealth, whose decision shall be final, and shall direct the action of the trustees. There is a further provision, that the trustees shall receive and invest all moneys that shall be paid to them by the corporation from the proceeds of the sales of the land, and apply the same to the payment of the interest on the bonds, and the expenses of the trust, and to the purchase and cancellation of the bonds.*

---

* The indenture sets forth the trusts as follows:

"1st. To permit said party of the first part to remain in the possession and enjoyment of the granted premises, and to improve the same by filling said land and flats, and by laying out streets and avenues thereon, and otherwise making the same available for sale, and to sell and convey the same and to dispose of the current net revenues and avails thereof in such manner as it shall elect, until and unless default shall be made in the payment of said bonds, or the interest thereon, or any part thereof.

"2d. To release from time to time from the lien created by this instrument, so that the same may be sold and conveyed free from incumbrance, such portions of said lands as in the unanimous opinion of said trustees, and of the president of said Boston Water Power Company for the time being, may be safely released without impairing the security for the payment of said bonds, either by reason of the receipt of the proceeds of sales by said trustees, or by reason of the increased value of the lands of said corporation by reason of the advance in value, or by reason of the increased value given to the remaining lands by the improvements made thereon by said corpo-- ration. And the deed of the said corporation, and the release of the said trustees, both duly executed, shall be conclusive evidence of the unanimous opinion of said trustees and of said president. And in case said trustees and said president shall not agree, then, upon the application of either, the question of the lands so to be released shall be submitted to and determined by the treasurer of the Commonwealth of Massachusetts for the time being,. whose written decision shall be final, and shall direct the action of the trustees thereon.

"3d. To receive and invest all sums of money that may be paid them by said party of the first part from the proceeds of sales of said land, and to pay therefrom from time to time all interest due or that may become due on said bonds, and the expenses of the trust created by this instrument, including the reasonable compensation of the trustees; and to apply the residue to the purchase and cancellation of the bonds secured by this instrument; said purchase to be made at the market value of said bonds, but in no case at a price exceeding the par value thereof and accrued interest.

"4th. In case default shall be made in the payment of the bonds issued under this instrument, or any of them, or of any of the interest coupons

From this summary, and more clearly from the full provisions of the indenture, it appears that all the powers and duties of the trustees, not derived from provisions relating to a default in the payment of the bonds, are, after accepting the deed and making their certificate upon the bonds: 1st, to receive the bonds

---

attached thereto, at any time when and where the same may become due and payable according to the tenor and effect thereof, and for six months thereafter, then and in that case all of said bonds shall thereupon immediately become due and payable, and the said trustees, and the survivor or survivors of them, and their successors or successor in said trust, and the survivor or survivors of them, may, and upon the written request of the holders of at least one third part of the bonds then outstanding and unpaid, shall, enter upon and take possession of all and singular the granted premises, or so much thereof as shall then remain unsold, and all rights of the party of the first part therein, and all obligations and securities which may have been received for any lands conveyed by this instrument that may have been sold, and as the attorneys in fact or agents of the party of the first part, shall thereafter, and so long as said default shall continue, so manage and dispose of the same as shall best enable them to carry out and fulfil the purposes of their trust, either by sale or sales thereof in its then existing condition, or by completing the filling said lands and flats, or of such portions thereof as they shall deem expedient, and otherwise improving the same, and thereafter selling the same by public or private sale, upon such notice, in such parcels, at such prices, and upon such terms of payment and security, at such time or times, and in such manner, as they shall deem just and reasonable, and for the best interests of all parties concerned in the trust hereby created, with full power to give good and sufficient deeds of conveyance in fee simple for any lands so sold; and after paying all expenses connected with and incident to the management and care of said property, including the compensation of the trustees, and the cost of any improvements that may have been made thereon by them or their agents, shall apply any remaining surplus of the proceeds of any sale or sales made by them, and all other moneys that may have come into their hands as such trustees, or so much thereof as may be needed, to the payment *pro rata* of the principal and interest of all of said bonds then remaining unpaid, and shall restore the residue thereof, and all lands, securities and other property remaining in their possession after such payment is completed, to the party of the first part; and thereupon this trust shall terminate. And it is further declared that no purchaser under any or either of the foregoing trusts shall be under any obligation to inquire into the necessity or regularity of any sale thereunder, nor see to the application of any of the purchase moneys thereof, but that the receipt of the trustees or trustee for the time being to such purchaser or purchasers for such purchase moneys shall be his or their full and effectual acquittance and discharge therefor."

delivered to them under the agreement, and apply them in the manner prescribed; 2d, to receive the moneys, the proceeds of lands sold by the corporation, which should be paid to them by it, and apply them as prescribed; 3d, in regard to the land, in trust for the bondholders, to preserve the lien upon the land, except such as should be released by the trustees; and in trust for the corporation to permit it to have the possession, management and control of the land, and the power to sell and convey the same, but not free from the lien, without the approval of the trustees or of the treasurer of the Commonwealth, and to dispose of the proceeds of sales; and upon the further trust for the corporation that they shall release the lien upon lands sold by the corporation when in their opinion, or in that of the treasurer of the Commonwealth, such release will not impair the security.

The plain intention and effect of the instrument is, that, until the provisions relating to a default in the payment of the bonds shall take effect, the corporation shall retain the full management and control of the lands, and the exclusive power to negotiate and make sales and conveyances, with the qualification that it cannot convey any land discharged of the lien without the release of the trustees. The trust for the bondholders therefore is, to hold the legal title so as to preserve the lien until the bonds are paid according to their tenor, except as to such portions as in their opinion, or according to the written opinion of the treasurer of the Commonwealth, can be safely released without impairing the security, and the whole power and interest and duty of the trustees in respect to the land is so to hold the legal title; beyond that they have no right in the management, improvement or disposition of the land, nor in the proceeds of the sales of it except such as the corporation may voluntarily pay to them. It is obvious that, except under the powers and interest given to them after default in the payment of the bonds, they have no title to the relief sought.

After default has continued for six months, the trustees are authorized to take possession of the land, and certain provisions of the indenture are to become operative, among which is a power of sale. Under the provision in a mortgage that in default of payment the mortgagee may enter and take possession of the premises and sell and dispose of them, it has

been held that the entry and possession are conditions precedent
without which the power of sale cannot be exercised. *Roarty*
v. *Mitchell*, 7 Gray, 243. It has also been held, that when the
entry authorized by the power is for the purpose of the sale
only, and to enable the sale to be made on the premises as re-
quired by the terms of the power, it is not necessary that it
should be formally made at any other time or manner than at
the time, and for the purposes, of the sale. *Cranston* v. *Crane*,
97 Mass. 459. In the power under consideration, we think the
entry is not authorized for the purpose of the sale only, but also
for other purposes with which the power of sale is so connected,
and upon which it is so dependent, that it cannot be exercised
except in connection with other powers and duties, and after
the assumption of them by the trustees by entry and possession
taken. The premises consisted of land and flats held by the
corporation for the purpose of selling, after improving them by
filling, laying out streets, &c. The sales were intended to be
made in small parcels, from time to time, as the lands should be
improved and prepared for sale. It was not intended that, upon
default in payment, the whole of the land should be sold at once,
but that it should be managed and developed and disposed of in
the same manner as before. The indenture plainly intends that
the duty of managing the property and preparing it for sale, and
of selling it, should be in one and the same party, and that the
power of managing and fitting for sale, and the power of sale,
should not be in different parties. Until default in payment,
these powers are in the corporation; after default, they continue
in the corporation until they are assumed by the trustees. The
bonds were not due for ten years. The interest was payable
semiannually, and the indenture provides that, on any failure to
pay interest, continued for six months, the whole of the bonds
shall become due and payable. It was not the intention of the
parties that the whole property should be sold at once upon a
default continued for six months, nor that a default should of
itself determine the authority of the corporation to manage and
dispose of the property; while it was intended that the trustees
should, after a default continued for six months, have power to
take the whole administration of the property into their own
hands. Until this is done, the limited power of sale given to

the corporation remains as if there had been no default; it is a part of the general power of managing and disposing of the lands, and does not pass to the trustees by the default, but by their act in taking the possession and management into their own hands. The true construction of the instrument implies, in the first declaration of trust for the corporation, the addition of such words as "and until possession therefor shall be taken by the trustees, as hereinafter provided." By the terms of the power to the trustees, when a default has continued for six months, the trustees may enter upon and take possession of the premises. That this was not only not imperative upon the trustees, but that it gave them an option which it was contemplated that they might exercise, appears from the provision requiring them to take possession at the written request of the holders of one third of the bonds. Having taken possession, in the exercise either of their discretion, or of that of the bondholders, the direction is imperative that they, " as the attorneys in fact or agents of the party of the first part, shall, thereafter, and so long as said default shall continue, so manage and dispose of the same as shall best enable them to carry out and fulfil the purposes of their trust, either by sale or sales thereof in its then existing condition, or by completing the filling said lands and flats, or of such portions of them as they shall deem expedient, and otherwise improving the same, and thereafter selling the same by public or private sale, upon such notice, in such parcels, at such prices, and upon such terms of payment and security, at such time or times, and in such manner, as they shall deem just and reasonable, and for the best interest of all parties concerned in the trust hereby created, with full power to give full and sufficient deeds of conveyance in fee simple for any lands so sold."

It is also provided that, when the trustees take possession of the premises, they shall also take possession of all obligations and securities which may have been received for lands sold. The corporation covenants that, in case of default continued for six months, it will upon the written request of the trustees deliver up possession of the premises and all securities held by it for land sold, and that it will, upon written request, execute and deliver any further necessary conveyance.

By the true construction of the indenture, the trustees, after default continued for six months, can exercise their discretion whether to take possession or to leave the corporation in possession. Until they take possession, the rights of the corporation as to the management and disposal of the property remain as before. Upon entry and possession taken by the trustees, the right of the corporation to the management and disposal of the lands ceases, and the trustees become vested with their full powers for the execution of their trust, to improve and sell the lands as they shall think most for the advantage of all parties interested. One of these powers is the power of sale, and we think it arises only upon possession taken, and that upon a mere default, and without entry, and while the corporation remains in the possession and management of the premises, there is no power in the trustees to sell and convey, from time to time, parcels of the land. By the words of the indenture, entry and possession taken is a condition precedent to the exercise of the power of sale, and, by the meaning of it, that power is to be exercised only in connection with larger powers and duties, which cannot be assumed without taking possession of the premises.

The amended bill alleges that prior to January 22, 1880, default was made in the payment of interest on the bonds. The contract in respect of which relief is sought is dated June 3, 1880. It does not appear that the contract was made more than six months after the default, and it appears that no entry for default has been made, but the corporation continues in the lawful exercise of the powers granted to it in the declaration of trust. The sale, therefore, cannot be made by virtue of the power in the trust declared for the bondholders; and the agreement and sale can have effect only under the authority and for the benefit of the Boston Water Power Company.

As, for these reasons, the plaintiffs fail to show title to the relief sought, it is unnecessary to consider the other questions argued at the bar. *Bill dismissed.*

The case was argued at the bar in November 1880, by *H. D. Hyde*, (*S. Bartlett* with him,) for the plaintiffs, and submitted on a brief by *J. P. Healy*, for the defendant; and in May 1882, was further submitted on briefs by *Bartlett & D. Foster*, (*Hyde* with them,) for the plaintiffs, and on the former brief, for the defendant.