JOHN SHEPARD & others *vs.* GEORGE F. RICHARDSON & others.

Suffolk.   March 11, 14. — July 5, 1887.   FIELD, C. ALLEN, & GARDNER, JJ., absent.

A corporation, having large tracts of unimproved lands, for the purpose of borrowing money to discharge existing liens upon the lands and to make them available for sale, issued bonds, the interest on which was payable semiannually, and, as security for the payment of principal and interest, conveyed its lands to trustees on the following trusts: 1. To permit the corporation to remain in possession, improve and sell the lands, until default should be made in the payment of the bonds, or the interest thereon. 2. To release from time to time from the lien created by the conveyance such portions as, in the opinion of the trustees and of the president of the corporation, might be safely released without impairing the security for the payment of the bonds. 3. To receive and invest the moneys received from the proceeds of sales of said lands, and to pay therefrom interest due on the bonds and the expenses of the trust, and to apply the residue to the purchase and cancellation of the bonds. The deed further provided that, in case default should be made in the payment of the bonds or of the interest thereof, and for six months thereafter, all the bonds should become payable; that the trustees then might, and upon the request of a certain number of the holders of the bonds should, enter and take possession of the granted premises, and should thereafter, as attorneys and agents of the corporation, " so long as said default shall continue," so manage and dispose of the same as to carry out the purposes of the trust, either by sales of the lands in their then existing condition, or by improving the same and thereafter selling them, with the largest discretion as to quantity, time, notice, and mode of sale, as they

might deem reasonable and "for the best interests of all parties concerned in the trust;" and that the trustees, after applying any surplus proceeds of sales to the payment of the bonds, "shall restore the residue thereof, and all lands, securities, and other property remaining in their possession after such payment is completed," to the corporation, "and thereupon this trust shall terminate." The corporation covenanted that, in case of default continuing for six months, it would, on the request of the trustees, deliver up possession of the granted premises, and make any further conveyance required; and it was "further mutually agreed that, upon payment of the principal and interest of said bonds, the conveyance herein made, and the estate and interests hereby granted " to the trustees, " shall be void," and the right to the lands conveyed should revert to the corporation. *Held*, on a bill in equity by the bondholders, that the provisions of the deed were inconsistent with a right on the part of the trustees to treat the instrument merely as a mortgage, and to foreclose by entry and lapse of time.

HOLMES, J. This is a bill in equity, brought by some of the bondholders secured by an indenture, which was before the court in *Foster* v. *Boston*, 133 Mass. 143,* against the grantor and

---

* The indenture, which was entered into by the Boston Water Power Company, a corporation, as party of the first part, and certain persons, as parties of the second part, recited that the corporation, being possessed of large tracts of unimproved lands, for the purpose of borrowing money to discharge existing liens upon the lands and to make them available for sale, proposed to issue bonds, the interest on which was to be payable semiannually, and, as security for the payment of principal and interest, conveyed its lands to the parties of the second part on the following trusts:

" 1st. To permit said party of the first part to remain in the possession and enjoyment of the granted premises; and to improve the same by filling said land and flats, and by laying out streets and avenues thereon, and otherwise making the same available for sale, and to sell and convey the same, and to dispose of the current net revenues and avails thereof in such manner as it shall elect, until and unless default shall be made in the payment of said bonds, or the interest thereon, or any part thereof.

" 2d. To release from time to time from the lien created by this instrument, so that the same may be sold and conveyed free from incumbrance, such portions of said lands as in the unanimous opinion of said trustees, and of the president of said Boston Water Power Company for the time being, may be safely released without impairing the security for the payment of said bonds, either by reason of the receipt of the proceeds of sales by said trustees, or by reason of the increased value of the lands of said corporation by reason of the advance in value, or by reason of the increased value given to the remaining lands by the improvements made thereon by said corporation. And the deed of the said corporation, and the release of the said trustees, both duly executed, shall be conclusive evidence of the unanimous opinion of said trustees and of said president. And in case said trustees and said president shall not agree, then, upon the application of either, the question

trustees, treating the instrument as a mortgage, and praying that it may be declared to have been foreclosed by an entry of the trustees made more than three years before the filing of the bill, and that the trustees may be ordered to distribute the property among the bondholders ; or, if the mortgage is not foreclosed, that a short day of foreclosure may be fixed. The defendant company, among other things, denies that the indenture contemplates or permits a strict foreclosure, and, as we are of opinion with it upon this point, it will not be necessary to discuss the other questions which have been raised.

We readily admit that neither the giving of a power of sale nor the intervention of trustees, nor both together, in a mortgage, necessarily take from the court the power to decree a

---

of the lands so to be released shall be submitted to and determined by the Treasurer of the Commonwealth of Massachusetts for the time being, whose written decision shall be final, and shall direct the action of the trustees thereon.

"3d. To receive and invest all sums of money that may be paid them by said party of the first part from the proceeds of sales of said land, and to pay therefrom from time to time all interest due or that may become due on said bonds, and the expenses of the trust created by this instrument, including the reasonable compensation of the trustees; and to apply the residue to the purchase and cancellation of the bonds secured by this instrument; said purchase to be made at the market value of said bonds, but in no case at a price exceeding the par value thereof and accrued interest.

"4th. In case default shall be made in the payment of the bonds issued under this instrument, or any of them, or of any of the interest coupons attached thereto, at any time when and where the same may become due and payable according to the tenor and effect thereof, and for six months thereafter, then and in that case all of said bonds shall thereupon immediately become due and payable, and the said trustees, and the survivor or survivors of them, and their successors or successor in said trust, and the survivor or survivors of them, may, and upon the written request of the holders of at least one third part of the bonds then outstanding and unpaid shall, enter upon and take possession of all and singular the granted premises, or so much thereof as shall then remain unsold, and all rights of the party of the first part therein, and all obligations and securities which may have been received for any lands conveyed by this instrument that may have been sold, and as the attorneys in fact or agents of the party of the first part, shall thereafter, and so long as said default shall continue, so manage and dispose of the same as shall best enable them to carry out and fulfil the purposes of their trust, either by sale or sales thereof in its then existing condition, or by completing the filling of said lands and flats, or of such portions thereof as they shall deem expedient, and otherwise improving the same, and thereafter selling

strict foreclosure; *Shaw* v. *Norfolk County Railroad*, 5 Gray, 162; *Hall* v. *Sullivan Railroad*, 21 Law Reporter, 138; *S. C.* 2 Redf. Am. Ry. Cas. 621; and that the security will be presumed to give the usual remedies, unless the terms of the instrument exclude them. *Balfe* v. *Lord*, 2 Dr. & W. 480, 489. But those remedies may be excluded or qualified by express words, or by fair implication, as when it appears that sale alone is contemplated. *Locking* v. *Parker*, L. R. 8 Ch. 30, 39. *Jenkin* v. *Row*, 5 De G. & Sm. 107. *Schweitzer* v. *Mayhew*, 31 Beav. 37. There is no danger that mortgagees will be oppressed by mortgagors, and there is no reason for courts undertaking to force rights upon them, or to do more than to construe the security which they have been content to accept.

---

the same by public or private sale, upon such notice, in such parcels, at such prices, and upon such terms of payment and security, at such time or times, and in such manner, as they shall deem just and reasonable, and for the best interests of all parties concerned in the trust hereby created, with full power to give good and sufficient deeds of conveyance in fee simple for any lands so sold; and after paying all expenses connected with and incident to the management and care of said property, including the compensation of the trustees, and the cost of any improvements that may have been made thereon by them or their agents, shall apply any remaining surplus of the proceeds of any sale or sales made by them, and all other moneys that may have come into their hands as such trustees, or so much thereof as may be needed, to the payment *pro rata* of the principal and interest of all of said bonds then remaining unpaid, and shall restore the residue thereof, and all lands, securities, and other property remaining in their possession after such payment is completed, to the party of the first part; and thereupon this trust shall terminate. And it is further declared that no purchaser under any or either of the foregoing trusts shall be under any obligation to inquire into the necessity or regularity of any sale thereunder, nor see to the application of any of the purchase moneys thereof, but that the receipt of the trustees or trustee for the time being to such purchaser or purchasers for such purchase moneys shall be his or their full and effectual acquittance and discharge therefor."

The corporation covenanted that, in case of default continued for six months, it would, upon the written request of the parties of the second part, deliver up to said trustees possession of the premises and all securities held by the corporation for lands sold; and that it would, upon like written request, execute and deliver any further necessary conveyance.

The indenture also recited that " it is further mutually agreed that. upon payment of the principal and interest of said bonds, the conveyance herein made, and the estate and interests hereby granted to said party of the second part, shall be void," and that the right to the lands conveyed should revert to the corporation.

Properly speaking, the right to foreclose means the right to cut off a right to redeem given by equity, when, by the condition of the mortgage, the mortgagee's estate has become absolute at law. *Sampson* v. *Pattison*, 1 Hare, 533, 536. *Koch* v. *Briggs*, 14 Cal. 256, 262. When by the letter of the deed the mortgagor still has the right to redeem, the mortgagee cannot maintain a bill to foreclose. *Bonham* v. *Newcomb*, 1 Vern. 232; 2 Vent. 364. If, as in Welsh mortgages, the mortgagee's estate never becomes absolute, there never can be a foreclosure. *Yates* v. *Hambly*, 2 Atk. 360. Adams Eq. 125, 126. And although the failure expressly to fix a limit to the time for redemption does not necessarily take away the usual remedies, *Balfe* v. *Lord*, *ubi supra;* yet in some cases, where no time was fixed by the deed beyond which the mortgagor could not defeat the mortgagee's estate by payment, the foundation for foreclosure has been thought to be wanting. *Teulon* v. *Curtis*, Younge, 610.

The indenture before us fixes no limit to the mortgagor's right to redeem while the land remains unsold. It is not a carelessly drawn or imperfect instrument, as in *Balfe* v. *Lord*, and the fact, therefore, is important. The language is, " It is further mutually agreed that, upon payment of the principal and interest of said bonds, the conveyance herein made, and the estate and interests hereby granted to the party of the second part, shall be void," &c.; not, upon payment of the principal and interest of the bonds " according to their tenor," as in 5 Gray, 164. The words used, taken by themselves, import a right to avoid the conveyance by payment at any time, and this interpretation is confirmed by the provision in the fourth article of the trusts for the trustees managing the property, " so long as said default shall continue." These words contemplate the trustees' management as lasting for whatever time may be necessary, however long, until the bonds are paid; not that it shall come to an end in three years, by mere lapse of time, if the default continues for that time.

This is the first step; and the whole of the fourth article just mentioned tends the same way. The trust is very like the trusts for sale in the English cases which we have cited, where a foreclosure was held to be excluded. In the next place, the trustees upon entry are to manage and dispose of the property

as agents of the party of the first part, that is, of the company giving the security. This provision, again, of itself, hardly can be made consistent with an entry to foreclose by lapse of time; for such an entry, as well as the entry provided for in common mortgages, is adverse to the mortgagor. The next thing to be noticed is the peculiar character of the trustees' duties after they have entered, — a peculiarity which was made necessary by the peculiar nature of the property. This was a great tract of land in Boston, mostly covered by water, which was to be filled and made suitable for building purposes and for the extension of the city in that direction. If the trustees entered, the scheme was not to be defeated, but simply the management was to be changed. They were to go on and fill as the company had been doing, and to sell, with the largest discretion as to quantity, time, notice, and mode of sale, as they might deem reasonable and "for the best interests of all parties concerned in the trust."

It is true that the trustees were not bound to complete the filling, and that their power possibly extended to selling the whole property at once; and it may be asked how, when such a power as that was given, any implication can be found against the less stringent power to foreclose by lapse of time. But it will be seen, upon reading the fourth article, that their powers to sell are not the common mortgage powers, but stand alongside of, and upon the same footing with, their power to complete the filling, as one of the ways in which, as attorneys and agents of the grantor, so long as the default shall continue, they are to manage and dispose of the property for the best interests of all parties. The exercise of a common power of sale may be determined upon without regard to the interest of the mortgagor. A mortgagee's decision to sell or to foreclose is governed by his own interest alone, although, in the conduct of it when decided upon, the mortgagor's interest must be considered also. See *Kirkwood* v. *Thompson*, 2 Hem. & M. 392, 400.

The effect of the words "so long as said default shall continue" has been considered already. Finally, it is provided that the trustees, after applying surplus proceeds of sales, &c. to payment of the bonds, "shall restore the residue thereof, and all lands, securities, and other properties remaining in their possession after such payment is completed, to the party of the first

part, and thereupon this trust shall terminate." So that the whole plan, from beginning to end, was the possible gradual satisfaction of the debt, as the new-made land should be gradually sold off for building lots ; and the plan was to remain the same, whether the company or the trustees carried it out. See *Foster* v. *Boston, ubi supra.*

Without saying that any one of the considerations which we have mentioned would be conclusive if it stood alone, we are of opinion that the whole tenor of the deed is inconsistent with a right on the part of the trustees to foreclose by entry and lapse of time.                           *Bill dismissed.*

*S. Bartlett & R. D. Smith, (N. Matthews,* Jr., with them,) for the plaintiffs.

*J. Lowell & H. D. Hyde,* for the Boston Water Power Co.

*G. F. Richardson, (H. G. Nichols & G. D. Braman* with him,) for the trustees.