------o------

PORTER A. HITCHCOCK v. ELI SIMPKINS AND JOHN R. BROWN.

*Deed—Vested remainder—Testamentary disposition.*

A father executed and delivered to his son a warranty deed of his homestead, subject to the following conditions, limitations, and uses:

　　*a*—That the father was to remain in full possession and control of the land during his natural life, and enjoy the rents and profits arising therefrom.

　　*b*—That the son was to pay his father an annuity of $100 during the remainder of his natural life, and that at his death the title to the land should be in the son, subject to the further limitation that after the father's death his housekeeper, if she should continue as such until that event, was to have a like possession, use, and enjoyment of the land, and receive a like annuity during the remainder of her natural life.

　　*c*—That in case of the refusal or neglect of the son to pay said annuities, or to perform any other of the aforesaid con-

ditions, the deed should be null and void, otherwise remain in full force and effect.

And it is held that it was not intended to defer the time when the title should vest, but that the son took a vested remainder subject to the condition mentioned.

Appeal from Oakland. (Moore, J.) Submitted on briefs February 13, 1894. Decided February 27, 1894.

Bill to foreclose a mortgage. Complainant appeals. Decree affirmed. The facts are stated in the opinion.

*John Fitzpatrick,* for complainant.

*George W. Smith,* for defendants.

HOOKER, J. The complainant's bill was filed for the foreclosure of a real-estate mortgage for $60 given by Abraham Percival to William H. Snowden on February 1, 1883, and by Snowden assigned to the complainant. The bill alleges that on January 29, 1881, said Percival executed and acknowledged a deed of said premises to his son, Richard W. Percival, which was subject to certain provisions and conditions therein contained, under which deed defendant Simpkins claims title by purchase from the younger Percival, and Brown is a subsequent mortgagee from Simpkins. The bill states, further, that the deed from Abraham Percival was voluntary, and was not accompanied or followed by a change of possession until after the death of Abraham Percival; that it was testamentary in its character, and passed no title. It is also alleged that these defendants are not purchasers in good faith.

The proofs show that on January 29, 1881, Abraham Percival lived upon the premises with one Elizabeth Armstrong, whom he boarded and clothed for her services as housekeeper. Richard W. Percival was his only child, and he was living abroad. He aided his father by contributions of money, and in 1880 he spent some time at Pon-

tiac, and made an arrangement to pay him $100 a year, upon condition that his father should give him a deed of the place. The deed was executed, and contains the stipulation agreed upon. It was an ordinary warranty deed, with the following language inserted immediately after the description of the premises, viz.:

"Subject, however, to the following payments, conditions, limitations, and uses, to wit:

"*First.* The said party of the first part is to remain in the full possession, control, and occupancy of said above-described lands for and during the period of his natural life, enjoying the same, together with the rents and profits arising therefrom, as fully and freely as though this deed had never been executed.

"*Second.* That said party of the second part will pay, or cause to be paid, to the party of the first part, the sum of one hundred dollars ($100) each and every year for and during the remainder of the natural life of the said party of the first part, which he hereby agrees to do. But at the death of the said party of the first part the title shall be, and is hereby declared to be, in said party of the second part, subject, however, to the further limitation [then follow like provisions as to Mrs. Armstrong, providing she should continue to his decease as his housekeeper].

"*Fourth.* That in case said party of the second part shall refuse or neglect to pay, or cause to be paid, said sum or sums of money, as aforesaid, or to perform any and all the conditions hereinbefore mentioned, then and in that case this deed shall be null and void; otherwise, to be and remain in full force and effect."

This deed was duly recorded before the execution of complainant's mortgage. The annuity of $100 appears to have been regularly paid. It is shown that on February 1, 1883, Abraham Percival borrowed $60 from Snowden, giving the mortgage sought to be foreclosed. Snowden and another say that he said at that time that he had been disappointed in getting some money that he had expected from his son. Snowden went to the register's office, and was told that the title was "all right," and

closed the transaction. In May, 1883, he was paid $25 upon the mortgage by the mortgagor. He kept it until 1890 without effort to collect, so far as appears, and then assigned it to complainant. Early in 1886, Abraham Percival died, this event having been preceded by the death of Mrs. Armstrong. Richard W. Percival went into possession upon the death of his father, and subsequently sold the premises to Simpkins, who mortgaged to Brown for $800, using the money to build upon the premises.

The appellant's counsel contends that the instrument given by Abraham Percival to his son was inoperative to convey title, and was no more than a devise, subject to revocation by the deceased, and that the complainant's mortgage revoked it. The test is the time when the instrument was designed to take effect. If it conveyed a present interest, though of a future estate, the title vested. If, on the contrary, it was to take effect only at the death of the maker of the instrument, it was testamentary in character, and could only operate as a will, if of any force at all. In the language of a writer upon wills:

"If a man, by deed, limit lands to the use of himself for life, with remainder to the use of A. in fee, the effect upon the usufructuary enjoyment is precisely the same as if he should, by his will, make an immediate devise of such lands to A. in fee; and yet the case fully illustrates the distinction in question, for in the former instance A., immediately on the execution of the deed, becomes entitled to a remainder in fee, though it is not to take effect in possession until the decease of the settlor, while, in the latter, he would take no interest whatever until the decease of the testator should have called the instrument into operation." Jarm. Wills, p. 18, and cases cited; Schouler, Wills, §§ 265, 266, and notes; *Habergham v. Vincent*, 2 Ves. Jr. 230; 19 Cent. Law J. 46, 47; *Leaver v. Gauss*, 62 Iowa, 314; *Turner v. Scott*, 51 Penn. St. 132; *Sperber v. Balster*, 66 Ga. 317.

The present case must turn upon the effect of the words,—

" But at the death of the said party of the first part
the title shall be, and is hereby declared to be, in said
party of the second part, subject, however, to the further
limitation," etc.

It is contended that these words indicate an intention
that no title should vest in the son until the death of his
father. Among the many authorities cited by the counsel
for the complainant are three Michigan cases, which we
think in harmony with the rule stated.

*Bigley v. Souvey*, 45 Mich. 370, may be passed with the
remark that the deed in question states that—

" The conveyance of land herein named shall be and
continue the property of the first party during his life-
time, and the remainder to said second party immediately
at the death of said first party,"

In *Lautenshlager v. Lautenshlager*, 80 Mich. 285, deeds
were admitted to probate as a will, and the judgment was
affirmed upon the finding of fact that they were to become
operative at death.

In *Schuffert v. Grote*, 88 Mich. 650, a deed was made
and delivered to a son with the remark that the father
wished it kept from record until after his death. It was
immediately handed back to the father, who kept it for a
couple of years, and then destroyed it. It was held that
the title did not pass, and that it was subject to revoca-
tion by destruction.

None of these cases go further than to hold that, where
the title does not at once vest, the instrument is subject
to revocation. In the present case the deed was based on
a valuable consideration, the payment of which was made
one of the conditions. The deed was delivered and
recorded, and remained in the hands of the grantee, who
performed all the conditions required by the deed, so far
as this record shows. While it is true that the mortgagee
testified that Abraham Percival said, at the time he made

complainant's mortgage, that he had been disappointed in getting money from his son, he did not say that it was due by the terms of this deed, and this testimony was hearsay at best. Complainant makes no such point in his brief, and, if he did, there is no proper evidence to support it. The deed contains the language usual to a present conveyance, and all the circumstances show that the intention was to place this property where it would be secured to the son, who assumed the burden of the support of his father and the housekeeper. We think that the language mentioned was not designed to defer the time when the title should vest, but that the son took a vested remainder subject to the condition mentioned. Had the grantor intended this as a testamentary disposition, a slight change in the language used would have expressed it. We think it more reasonable to hold that these words meant that at death the son's estate should become complete, except as it was by that clause further subjected to an obligation to provide for the housekeeper if still living. The deed, being on record, was notice to the world of the son's rights, and complainant s mortgage must yield to his superior title.

The decree of the circuit court, dismissing the bill, will be affirmed, with costs.

The other Justices concurred.