ENGEL *v.* LADEWIG.

1. DEEDS—RESERVATIONS—LIFE ESTATE — HUSBAND AND WIFE AS GRANTORS.

A husband owning a fee in land, and his wife owning an inchoate right of dower therein, may give a conveyance that passes the title in fee, or may impose any limitations they see fit; whence they may reserve a life estate to themselves and the survivor of them.

2. SAME—RESERVATIONS—CONSTRUCTION—LIFE ESTATE—LIEN FOR PAYMENTS.

A deed containing the words "grant, bargain, sell and confirm" and the covenants of warranty and seisin in common use in warranty deeds, reserving to the grantors "all right, title and control so long as we or either of us shall live" and directing that the grantee shall pay "out of the

above described real estate " certain sums to the grantors' children, creates a life use for the grantors, and provides a lien upon the land for the payment of the sums mentioned.

3. MORTGAGES—REDEMPTION—RIGHT OF REMAINDERMAN — FRAUD OF LIFE TENANT.

Where, by connivance with the life tenant of certain land, her brother bought a mortgage thereon and foreclosed it and deeded the land to her for the purpose of cutting off the remainderman's title, he is entitled to redeem by paying the amount of the mortgage, less the value of an annuity equal to the annual interest charge payable by the life tenant during her expectancy of life as shown by the standard life tables.

Appeal from Ottawa; Padgham, J. Submitted April 10, 1908. (Docket No. 29.) Decided May 26, 1908.

Bill by Gustav Engel against Charles Ladewig and Maria Engel to redeem from a mortgage foreclosure. From a decree for complainant, defendants appeal. Affirmed.

*Smedley & Corwin,* for complainant.

*Walter I. Lillie,* for defendants.

MOORE, J. Complainant is one of the children of defendant Maria Engel and Frederick Engel, now deceased. Defendant Charles Ladewig is a brother of Maria Engel. On November 20, 1899, Frederick Engel was the owner of a fractional forty acres of land which on that day, his wife, Maria Engel, joining in the deed, he conveyed to the complainant. The farm was mortgaged for $200, the money having been paid to Gustav at the time the mortgage was given for personal property he sold his father.

The deed was in the usual short form of warranty deed, and after the description of the lands, in the blank space was written:

"We, the parties of the first part, reserve all right, title and control so long as we or either of us shall live, and after the death of us, said party of the second part shall pay out of the above described real estate the follow

ing sums of moneys to the within named persons, to wit:
To our son Wilhelm Engel the sum of two hundred dol-
lars; to our daughter Elizabeth Voelker the sum of one
hundred dollars; to our daughter Malvine Sharp the sum of
one hundred dollars; to our daughter Mathilde Engel the
sum of one hundred dollars; to our grandson John Bruisema
the sum of one hundred dollars; said above sums of
money shall be paid one year after our death, and this
indenture shall have no effect until said sums of money
have been paid; the amount of $100 set forth to our
grandson John Bruisema shall not be paid to him until
he is twenty-one years of age."

Then follows the habendum clause, with the covenant
of seisin, and warranty against encumbrances, as fol-
lows:

"Except a mortgage of two hundred dollars given to
Benton Green, and that we will and our heirs, executors
and administrators shall warrant and defend the same
against all lawful claims whatsoever, except the mortgage
aforesaid."

Then follow the signatures of the said Frederick and
Maria Engel and seals, and the acknowledgment was
taken before the said Charles Ladewig, notary public. The
deed was delivered to the grantee on its execution, and by
him later placed on record. The father, Frederick Engel,
died in January, 1900; after that the mother stayed upon
the farm. Gustav worked the farm on shares, dividing
the proceeds with his mother. The second year a dis-
agreement arose between Gustav and his mother and it
ended in his leaving the management and control of the
farm to her since that time. The father paid the interest
on the mortgage for the year 1899. The mother, Maria
Engel, paid the interest the next year, 1900. No more
interest was paid. In 1902 the defendant Ladewig pro-
cured an assignment of the mortgage and later foreclosed
it, by advertisement, and upon receiving a sheriff's deed
of the premises he conveyed the land to his sister Maria
Engel, by warranty deed, who offered the land for sale,
asking $1,600 for it, and it was from a prospective pur-

chaser that Gustav first learned that Ladewig had bought the mortgage, foreclosed it, and deeded the land to his mother. He then tendered the amount of the mortgage and interest to Ladewig, who refused to take the money. This suit was then brought to allow him to redeem the land.

The case was tried in open court. After hearing all the testimony the trial judge expressed himself in part as follows:

"I am satisfied that the agreement and understanding between Mrs. Engel and her brother, Charles Ladewig, was fraudulent in respect to the rights of Gustav and if not an active fraud was a legal fraud on his said rights under all evidence in the case. I am of the opinion that Gustav Engel should be allowed to redeem this property by paying what the law, under the circumstances, would require him to pay at this time. By the terms of the said deed from the parents to Gustav, he, Gustav, did not assume or agree to pay the said mortgage held by Benton Green, the only obligation resting upon Gustav was to pay the mortgage in the case of foreclosure, to protect his own title to the property, and in case of his neglect to do that he would lose it.

"The proofs in this case show Maria Engel to be sixty-two years of age. Her expectancy, as shown by the life tables introduced in evidence, would be 12.86 years. The interest she was required to pay was $10 per year on a principal of $200, the amount of the mortgage, reckoning interest at five per cent. The amount she would be required to pay for the said 12.86 years, calculating the present worth of $10, would amount to $92.87. Deducting this amount from $200 leaves $107.13 which Gustav Engel, as remainderman, should pay to redeem this property. He should not be charged with any costs of the foreclosure, and, under the circumstances of the case, no costs will be allowed either party in this cause."

From a decree rendered along the lines of the opinion, an appeal is taken to this court.

Counsel concede that, if the title to the land had been in Frederick Engel and wife jointly, the first provision in the deed would have reserved to both the use of the

property during their natural lives and to the survivor during his or her natural life, but he argues:

"But the title to the land was in Frederick Engel. His wife, Maria Engel, had only her inchoate right of dower therein. Could Frederick Engel reserve to his wife a greater estate than she owned? Could Maria reserve to herself a greater estate than she was then possessed of? To both questions we answer, No."

He then cites many authorities and claims:

"So we say that this reservation gives to Frederick Engel a life estate in the farm during the lives of himself and his wife; at the death of the survivor of the two, and not before, was Gustav to have the use of the land (providing all other conditions are complied with, of course). Frederick Engel dying before his wife, his estate descends to his heirs and shall be held by them during the life of his widow. This leaves Maria then with her right of dower, to wit, the use of an undivided one-third of the land, and the children,— Gustav, Wilhelm, Elizabeth, Malvine and Mathilde,—with the use of the remaining two-thirds during the life of Maria, their mother."

The trouble with this argument is that it ignores Frederick Engel. He was owner of the fee. His wife was the owner of an inchoate right of dower. The two could give a conveyance that passed the title in fee or they might impose any limitations they saw fit. They in fact used language that reserved to both of them or the survivor of them the use of the land so long as either of them lived. 1 Jones on Real Property, §§ 525, 526; *Cable* v. *Cable*, 146 Pa. 451; *Cates* v. *Cates*, 135 Ind. 272.

With reference to the other provisions in the deed. The whole deed must be read together to find out the intention of the grantor. The words of the deed are "grant, bargain, sell * * * and confirm," and the grantor binds himself by the covenants of warranty and seisin which form a part of the warranty deed in common use in this State. And the condition, read in the light of the grant, is to be interpreted as creating, as to the first

provision, a life use for the grantors, and as to the other provisions a lien upon the land for the payment of the sums of money mentioned therein. *Hitchcock* v. *Simpkins*, 99 Mich. 198; *Martin* v. *Cook*, 102 Mich. 267.

There was an abundance of testimony to show that the defendants planned to have the mortgage foreclosed for the purpose of cutting off complainant's title and having it inure to the benefit of the defendant Maria Engel. This being so, the only other question calling for consideration is, Upon what terms should complainant be allowed to redeem ?

The rule has been stated as follows:

" The general doctrine of contribution applies to such owners, but is modified in its operation by the new element of inequality in the nature of their respective estates. As has already been shown, the holder of a partial interest is always compelled to redeem the whole mortgage. By a settled rule of the law, the life tenant, A, is bound to pay the annual interest on the mortgage accruing during his own lifetime. * * * This is his own debt, and for what he thus pays in keeping down the interest, he is not entitled to any contribution from B, the owner in fee. When, therefore, A redeems the mortgage, a certain part of the money paid to the mortgagee would be the equivalent of the annual interest on the mortgage which A was obliged to pay at all events, and this part, being his own debt, need not be refunded to him by B; but all of the mortgage debt over and above such part equitably belongs to B to pay; it is the share which should fall upon him by virtue of his reversionary interest.

" The problem then is to ascertain what portion of the total mortgage debt represents the annual interest on the mortgage which A is bound to pay during his life; subtracting that amount from the total sum, the balance is the share which B must contribute, and for which A may hold the mortgage as a lien on the land. An element of uncertainty—the duration of A's life—is inherent in the problem; but the courts, both of England and of this country, have adopted the standard 'life tables' as the basis of calculation in all such cases. The rule is settled that the present worth of an annuity equal to the annual interest running during the number of years which A is

liable to pay as his individual indebtedness." 3 Pomeroy on Equity Jurisprudence (3d Ed.), § 1223.

See, also, *Campbell* v. *Campbell*, 21 Mich. 438; *Damm* v. *Damm*, 91 Mich. 424, 109 Mich. 619; *Hodges* v. *Phinney*, 106 Mich. 537; *Lewis* v. *Wright*, 148 Mich. 290.

The decree is affirmed, with costs of this court.

Blair, Montgomery, Ostrander, and Hooker, JJ., concurred.