## OLDHAM ET AL. *v.* NOBLE ET AL.

[No. 17,466. Filed May 21, 1946. Rehearing Denied October 3, 1946. Transfer Denied October 31, 1946.]

70

*L. Russell Newgent,* of Indianapolis, for appellants.

*Stevenson & Kendall,* of Danville, and *Homer Elliott,* of Martinsville, for appellees.

CRUMPACKER, J.—In this case the appellants are seeking to establish ownership and recover possession of 111 acres of land in Brown County, Indiana, now held and occupied by the appellees, Charles R. Noble and Myrtle M. Noble, who claim to be the fee simple owners thereof. The appellee Minnie B. Allen is merely a formal party to the appeal and, as she asserts no interest in the matter, our use of the word "appellees" hereafter will be understood to have reference to the Nobles only. The controversy has its origin in the following facts:

On October 29, 1925, the land involved was owned by Morris and May Iverson, husband and wife, and on that date they conveyed the same to Herman J. Selig and Victoria Selig, his wife, and as a part of the consideration therefor the Seligs executed their note and mortgage to the Iversons in the principal sum of $1,000 payable two years after date with interest at the rate of 6 percent per annum until maturity and 8 percent from maturity until paid. Interest was payable annually and upon failure to pay any installment thereof when due the whole debt matured. On June 9, 1926, the

Seligs conveyed the land by warranty deed to Chester B. Walker for life with the remainder to his two daughters, the appellants herein. This deed was made subject to the Iverson mortgage but contained no provision whereby the grantees agreed to assume and pay the debt secured thereby. Default was made in the payment of interest due on October 29, 1926, and on December 30, 1926, the Iversons commenced suit in the Brown Circuit Court to foreclose their mortgage. Herman J. Selig and Victoria Selig, the mortgagors, and Chester B. Walker, owner of the life estate in the mortgaged land, were made parties defendant to such foreclosure proceedings but the appellants, owners of the remainder, were not joined nor were they in any manner ever brought into the litigation.

On May 31, 1927, judgment of foreclosure was entered and on July 16, 1927, the sheriff sold the mortgaged land on decretal order to Morris Iverson for $1,200.40. There was no redemption from this sale and on August 10, 1928, the sheriff executed his deed to said Iverson for the land in suit and Iverson went into immediate possession thereof. He and his successive grantees have been in possession ever since under a claim of absolute ownership. The property came to the appellees Charles R. and Myrtle N. Noble, by warranty deed on July 8, 1942, and they are now in possession thereof and assert ownership in fee simple clear of all adverse claims. Chester B. Walker, to whom the Seligs conveyed a life estate in the land subject to the Iverson mortgage, died on September 28, 1943, and on January 3, 1944, the appellants began this action through which they seek: (1) to quiet their title to the real estate in controversy; (2) to redeem the same from the Iverson mortgage; (3) an accounting of rents and profits since the death of the life tenant; and (4) possession of the

land. By way of answer the appellees assert that the appellants never owned any interest in the land except an equity of redemption from the Iverson mortgage which, although not foreclosed, is barred by the 15-year statute of limitations. By way of cross-complaint the appellees allege (1) that, as against the appellants, they are the equitable assignees of the Iverson mortgage and ask that it be foreclosed; and (2) that they are the owners of the land in fee simple, free and clear of all claims of the appellants, and ask that their title be quieted. The trial court sustained a demurrer to the second paragraph of the complaint, wherein the appellants seek to redeem from the Iverson mortgage, and the remaining issues were tried to said court, which found the facts specially and in substance as we have set them out above. Conclusions of law favorable to the appellees were stated and judgment rendered that the appellants take nothing by reason of their complaint and that the appellees' title to the land in suit be forever quieted and set at rest. The appellants' motion for a new trial was overruled and this appeal followed in due course. Error is predicated upon: (1) sustaining the demurrer to the redemption paragraph of the complaint; (2) each of the conclusions of law; and (3) overruling the motion for a new trial.

We are indebted to the appellees' counsel for a statement of the fundamental question involved in this appeal, the solution of which must control our decision. "If real estate is conveyed to a tenant for life and to remaindermen subject to a mortgage, which mortgage is subsequently foreclosed, to which foreclosure proceedings said remaindermen are not parties what interest, if any, do such remaindermen have as against the purchaser at the foreclosure sale and his assignees?

The appellants contend that they, as remaindermen, are the owners of the fee simple title to the land

involved, possession and enjoyment of which was post-poned during the life of Chester B. Walker, the life tenant. That not having been made parties to the fore-closure proceedings the same were valid as against the life tenant only and that the purchaser at sheriff's sale, and his successive grantees, got nothing more than said life estate which terminated with Walker's death on September 8, 1943. In their complaint the appellants offer to charge themselves with the remainderman's liability, if any, on account of the Iverson mortgage against which they ask credit for the reasonable rental value of the land since the death of the life tenant.

The appellees, on the other hand, contend that the only interest the appellants have or ever had in the real estate involved, as against the original mortgagees, Morris and May Iverson, is an equity of redemption which is nothing more than a right the mortgagor or any one claiming under him has, prior to foreclosure, to discharge the indebtedness and thus clear the property from the encumbrances of the mortgage. It is this right, say the appellees, which is cut off and destroyed by the valid foreclosure of a mortgage but, as the appellants were not made parties to the foreclosure proceedings here involved, their equity of redemption still exists and might still be asserted except for the 15-year statute of limitation which bars an action for such purpose.

On one proposition the appellants and the appellees are in accord. They agree that the estate conveyed to the appellants by the deed of Herman J. Selig and wife on June 9, 1926, was a vested remainder in the land described. In other words, the appellants got what was left of the entire grant after a life estate had been carved therefrom. As the entire grant was a fee simple title subject to the Iverson mortgage, the remainder going to the appellants was a fee simple

title limited to take effect in possession immediately after the expiration of Walker's life estate. But this remainder was mortgaged when it vested in the appellants and it becomes pertinent to inquire what effect such mortgage had on the appellants' estate. At English common law, and in a few of the states in this country, when real estate is mortgaged to secure a debt, the mortgagee acquires legal title at law but equity retains for the mortgagor the right to redeem upon fulfillment of the obligation for which a mortgage was executed and a failure to so redeem before foreclosure renders the mortgagee's title absolute. *Shepard* v. *Richardson* (1887), 145 Mass. 32, 11 N. E. 738. In title states it may be said that the mortgagor of real estate has no estate therein except the equity of redemption above described and, in strict legal theory, foreclosure, in said states, does nothing more than cut off such equity. In most of our states, however, the lien theory of a mortgage prevails and a mortgagee acquires nothing more than a lien upon the property mortgaged. The mortgagor retains legal title and foreclosure is necessary to transfer the same to the mortgagee, who must purchase the property at decretal sale if he wishes to acquire such title. See Wiltsie on Mortgage Foreclosures, Fifth Edition, Vol. 1, p. 10. Indiana is unequivocally committed to the lien theory and the mortgagee has no title to the land mortgaged. The right to possession, use and enjoyment of the mortgaged property, as well as title, remains in the mortgagor, unless otherwise specifically provided, and the mortgage is a mere security for the debt. *Baldwin* v. *Moroney* (1910), 173 Ind. 574, 91 N. E. 3; *Aetna Life Ins. Co.* v. *Broeker* (1906), 166 Ind. 576, 77 N. E. 1092; *State ex rel.* v. *Smith* (1902), 158 Ind. 543, 63 N. E. 25, 63 L. R. A. 116; *Lowe* v. *Turpie* (1897), 147 Ind. 652, 44

N. E. 25, 47 N. E. 150, 37 L. R. A. 233; *United States Saving Fund and Investment Co.* v. *Harris* (1895), 142 Ind. 226, 40 N. E. 1072; *Morton* v. *Noble* (1864), 22 Ind. 160; *Fletcher* v. *Holmes* (1870), 32 Ind. 497; *Grable* v. *McCulloh* (1867), 27 Ind. 472.

We conclude, therefore, that the appellants' vested remainder, acquired by virtue of the Selig deed of June 9, 1926, was more than a mere equity of redemption. They acquired legal title to the fee in the land and the right to possession and enjoyment thereof immediately upon the termination of the life estate. They could not be divested of this estate through the instrumentality of the Iverson mortgage except by the valid foreclosure thereof in an action to which they were parties. They were not so joined when the lien of the Iverson mortgage was foreclosed, and we are constrained to hold that the decree of foreclosure entered therein is a nullity as to them. *Wolfenberger* v. *Hubbard* (1915), 184 Ind. 25, 110 N. E. 198; *Butler* v. *Thornburgh* (1899), 153 Ind. 530, 55 N. E. 417, and cases cited.

As the only defendant in Iverson's suit to foreclose his mortgage, who had any interest whatever in the land involved, was Chester B. Walker and as his interest therein was merely a life estate, it is obvious that the purchaser at the resulting decretal sale acquired only such life estate, free from Walker's equitable right to redeem. The sheriff's deed which followed conveyed nothing more and when Walker died the appellees, who claim under the grantee named in such sheriff's deed, were left without any title interest in the land involved.

In so holding we do not overlook the fact that the

Supreme Court has held, in a case upon which the appellees place considerable stress, that when land, which is encumbered by a mortgage, is conveyed to a married man, his wife acquires no interest in the land, inchoate or otherwise, as against the mortgagee and her sole right concerning such land is a right to redeem from the mortgage. *Kissel* v. *Eaton* (1878), 64 Ind. 248. Were there no difference between a wife's inchoate interest in her husband's separate real estate and a vested remainder in lands we would be compelled, under authority of the Kissel decision, to accept the appellees' position in this case. A wife, however, has no vested estate in her husband's separate real property and her interest therein is a mere expectancy which may or may not mature into ownership. On the other hand, the owner of a vested remainder in lands has a definite and fixed estate therein which he may convey or encumber. He has such an estate even though the same was encumbered by a mortgage when he acquired it and the foreclosure of such mortgage, through the medium of a suit to which he is not made a party, leaves him in the same position he occupied before such foreclosure.

This brings us to a consideration of the position in which the appellants, as remaindermen, find themselves in reference to the Iverson mortgage, the foreclosure of which is a nullity as far as they are concerned. As between Walker and the appellants it is well settled, we think, that it was Walker's duty, as the life tenant, to keep the interest on the Iverson mortgage down, as such duty is an obligation to preserve the remainderman's estate which the law casts upon the life tenant because of his right to possession and use. It is equally well settled that the appellants were obligated to pay the principal sum of said mort-

gage because such payment would enlarge their remainder and to that extent inure to their benefit alone. 33 Am. Jur. Life Estates, Remainders, etc., § 461, p. 995; 21 C. J. Estates, § 94, p. 958; *Jefferson* v. *Bangs* (1909), 197 N. Y. 35, 90 N. E. 109; *Engel* v. *Ladewig* (1908), 153 Mich. 8, 116 N. W. 550; *Abney* v. *Abney* (1913), 182 Ala. 213, 62 So. 64; *Tindall* v. *Peterson* (1904), 71 Nebr. 160, 98 N. W. 688. Both Walker and the appellants defaulted in their respective duties and foreclosure followed. As such foreclosure is a nullity as to the appellants and their rights and obligations were unaffected and unaltered thereby, they are still obligated and still have the right to pay the principal sum secured by the Iverson mortgage.

It would seem at first blush that said mortgage was extinguished when Iverson bought Walker's life estate at sheriff's sale and paid the full amount of principal and interest due on the foreclosure judgment and that the appellants' obligation to pay the same had thus been discharged. To adopt such a view, however, would lend sanction to an unjust enrichment of the appellants' estate at the expense of others and by virtue of their own default in an obligation they justly owe. In *Martin* v. *Adams Brick Co.* (1913), 180 Ind. 181, 102 N. E. 831, we find the following expression of an equitable principle which we believe, in good conscience, should apply here: "While ignorance of the law does not relieve a person from the consequences of its operation, appellants are not in a position, while lawfully treating the receivership sale as a nullity, as to them, to obtain any advantage from legal mistakes of the first mortgagee or purchaser, growing out of a transaction founded on a decree binding on them, but not on the second mortgagees." It was clearly a legal mistake for Iverson to have omitted the appellants as parties defendant when he foreclosed his

mortgage but the decree he obtained is nevertheless binding upon him and those claiming under him. The appellants, however, cannot, in good conscience, be permitted to take advantage of such mistake merely because a decree, which they lawfully see fit to consider a nullity as to them, affords an opportunity to do so and thus deprive the appellees of both the land and the money. We therefore hold that the appellees are the owners of the Iverson mortgage, by equitable assignment, and have the right to foreclose it as against the appellants, who, by the same token, have a reciprocal right to redeem by the payment of the principal sum of said mortgage together with interest from the date the life estate, originally granted to Walker, terminated. This date is fixed for the accrual of interest because the appellees and their grantors were the owners of such life estate from the time it was sold at judicial sale until Walker's death and as, such owed the interest due on the mortgage to themselves as the equitable assignees thereof. Since Walker's death the appellees have occupied the position of mortgagees in possession and are accountable to the appellants in the manner and to the extent the law provides under such circumstances.

It is clear that the trial court reached its decision on the theory that the appellants have no interest in the property involved beyond an equity of redemption which they are now precluded from asserting because such right has been barred by the 15 year statute of limitation. This was error and we therefore reverse the judgment herein with instructions to sustain the appellants' motion for a new trial and permit the framing of such issues, as will, when determined, adjudicate the respective rights of the parties according to the principles of law announced herein.

Judgment reversed.

NOTE.—Reported in 66 N. E. (2d) 615.