Filed Oct. 15, 1886.

---

No. 12,762.

## WATSON v. PENN.

REAL ESTATE.—*Lease by Testator.* — *Life-Estate Taken Subject to.* — *When Rents go to Reversioner and not to Life Tenant's Administrator.*—Where one takes by devise a life-estate in land, subject to an existing lease which was made by the testator, and dies during the term of the lessee, before any rent becomes due, no part of the rent for the term is payable to his administrator, but the same goes to the reversioner.

SAME.—*Bequest of Personal Property.*—*Accounts.*—A bequest of all the testator's personal property, including notes and accounts, does not entitle the administrator of the life tenant to receive rents which become due after the death of his decedent.

SAME.—*Definition of Account.*—The term *account* has no clearly defined legal meaning, but its primary idea is some matter of debt, or a demand in the nature of a debt, arising out of contract, and does not include rents until they have accrued.

SAME.—*Time of Payment of Rents.*—*Usage.*—Where there is no time stipulated for the payment of rent for land which is leased for the term of one year, and no such usage as that an agreement to the contrary may be implied, payment is to be made at the end of the year.

From the Montgomery Circuit Court.

*T. H. Ristine* and *H. H. Ristine,* for appellant.

*A. D. Thomas,* for appellee.

MITCHELL, J.—John F. Penn, as guardian of Margaret Penn, brought this suit to recover from William W. Watson certain rent money collected by the latter as executor of the last will of James G. Watson, deceased, which the guardian claimed on behalf of his ward.

The questions involved arise on the pleadings, which present the following facts: James G. Watson died on the 17th

day of September, 1882, testate.    Prior to his death the testator leased 160 acres of land, owned by him, to one Hunt for the term of one year, to commence March 1st, 1883, the rental agreed upon being $275.    It does not appear that the time for the payment of rent was agreed upon, or that there was such a usage in that respect as would make it fall due otherwise than as the law would imply.

By his will the testator devised the land leased to his widow, Ann E. Watson, for her life, with remainder over to his granddaughter, Margaret Penn, the appellee's ward.

Another clause of the will gave the widow, Ann E. Watson, all the personal property, including all notes and accounts owned by and owing to the testator at the time of his death.

Ann E. Watson, the testator's widow, died intestate, June 19th, 1883, without having received any part of the rent in question.    The appellant, as executor of the last will of James G. Watson, received the rent, and refused to pay it over to the guardian of Margaret Penn, claiming that under the will it properly belonged to the estate of Ann E. Watson, deceased.

Upon the facts stated, the court below was of the opinion that the appellee was entitled to recover the whole amount received by the appellant for rent.    Judgment was given accordingly.    The only inquiry here is as to the propriety of this holding.

Mrs. Watson having taken her life-estate subject to an existing lease, which was made in the lifetime of the testator, and having died during the term of the lessee, before any rent became due, the first question is, was any or all of the rent for the term payable to her personal representative?

It is a settled rule of law, which the appellant does not question, that rents of real estate which have accrued and become payable before the death of an intestate, go to the personal representative, while those which mature and fall due afterwards go to the heir.    *King* v. *Anderson*, 20 Ind.

385; *Evans* v. *Hardy,* 76 Ind. 527; *McDowell* v. *Hendrix,* 67 Ind. 513; *Dorsett* v. *Gray,* 98 Ind. 273. Rents that have accrued are rents which are due.

By the common law, the right to receive accruing rent, which would have been payable to a life tenant, who took his estate subject to a prior lease for a term, passes to the reversioner in case of the death of such tenant before rent day. In such a case, wherever the reversion goes, whether to the original lessor, or his grantees or descendants, the accruing rent, from the rent day next antecedent to the death of the life tenant, follows without apportionment. If the estate of the life tenant terminates intermediate rent days, or before any rent has become due, the accruing rent becomes an incident of, and is annexed to, the estate of the reversioner. Whoever owns the reversion when the rent falls due is entitled to receive the whole sum, unless it is otherwise provided by contract. Taylor Landlord & Tenant, sections 154–156; *Marshall* v. *Moseley,* 21 N. Y. 280; *Perry* v. *Aldrich,* 13 N. H. 343 (38 Am. Dec. 493); *Wilcoxon* v. *Donnelly,* 90 N. C. 245; *Porter* v. *Sweeney,* 61 Texas, 213; *Stevenson* v. *Hancock,* 72 Mo. 612; *Westmoreland* v. *Foster,* 60 Ala. 448.

An exception to this rule occurs when the lessor receives a note, or other obligation, independent of the lease, to secure the payment of rent. Some of the authorities hold that by this means the obligation to pay rent is separated from the estate, and does not follow the reversion.

Rent in arrears is no part of the reversion. In any case such rents are recoverable by the personal representative of the life tenant. But rent is not in arrears and does not become a debt until the day when by the terms of the lease it becomes payable. *Wood* v. *Partridge,* 11 Mass. 488; *Randall* v. *Rich,* 11 Mass. 494; Wood Landlord and Tenant, section 452.

If there be no time stipulated for the payment of rent, or no such usage as that an agreement to the contrary may be implied, payment is to be made at the end of the year,

rent being in its nature a return for the enjoyment of the annual profits of the land. *Elmer* v. *Sand Creek Tp.*, 38 Ind. 56; *Wood* v. *Partridge, supra*; Taylor Landlord and Tenant, section 391.

It may be remarked, that at the common law, in case a life tenant who had no power to make a lease to continue beyond the period of his life, leased the estate and died between rent days, the under tenant or lessee escaped the payment of rent entirely from the last rent day. The lessee was not bound to pay the personal representative of his lessor because he suffered a technical eviction on account of the termination of his lessor's estate before the end of the term, or before the rent fell due. The reversioner could not recover, because the estate was not devolved upon him until the termination of the lease, and he was not in privity either of estate or by contract with the lessor. The death of the life tenant terminated the lease, as well as the estate of the lessor. If the lessee continued in possession, he became thenceforth liable to the reversioner under a new contract, but he was absolved from the payment of all rent which had not matured when the estate of his original lessor was determined.

The statute of 11 George II., c. 19, sec. 15, after reciting the defects in the law, provided, among other things, that in case the death of a life tenant, who had leased the estate, happened before the day fixed for the payment of rent, his executor or administrator might recover a proportion of the rent according to the time the lessor lived during the last rent period. Substantially to the same effect is section 5223, R. S. 1881.

This statute has, however, manifestly no application to the case before us. It provides, in substance, that when a tenant for life, who shall have demised any lands, shall die before the day when any rent becomes due, his executor or administrator may recover from the under tenant the rent which accrued before the life tenant's death.

As we have already seen, the lease or demise under which the rent in controversy accrued, was not made by the life tenant. She took her estate subject to the existing lease. The will which created her life-estate gave the reversion to the appellee's ward, and as the reversion came from the lessor, under whose lease the rent in controversy accrued, it came with the right annexed to collect all accruing rent, as an incident to the estate.

As there was no necessity for a statute in cases where the accruing rent followed the reversion, the common law rule prevails.

It is said, however, because the testator's will provided that his widow should take all his personal property, including all notes and accounts which might be owing him at his death, that by force of this bequest the accruing rents were carried out of the rules above referred to, and thus became the property of the widow.

As it does not appear either from any alleged usage or from the terms of the agreement, that any part of the rent had matured or become payable at the death of the testator, or even at the death of the widow, it is not perceived how the position contended for can be maintained.

The testator died after the lease was made but before the term commenced. It is impossible, therefore, in any view of the case, to consider the rent which subsequently accrued, as an account owing to the testator at the date of his death, so as to be controlled by the will. Accruing rents are, however, not affected by or included in the general term "accounts." While the term "account" has no very clearly defined legal meaning, the primary idea conveyed by it is some matter of debt, or a demand in the nature of a debt, arising out of contract. *Nelson* v. *Board, etc.*, 105 Ind. 287.

Rents accruing from, and issuing out of, real estate, are in the nature of chattels real, and can not be assimilated to, or accurately described as accounts, until they have accrued or

become due. Until then they are annexed to the real estate and an incident of the reversion. Bouvier Dict., title "Rent."

The judgment is affirmed, with costs.

Filed Oct. 14, 1886.