COMO, INC., Appellant–Defendant,

v.

CARSON SQUARE, INC., Appellee–Plaintiff.

No. 49A02–9406–CV–319.

Court of Appeals of Indiana, Second District.

April 13, 1995.

Michael J. Lewinski, Ice, Miller, Donadio & Ryan, Indianapolis, for appellant.

Brian C. Hewitt, J. Lee Robbins, Van Valer, Williams & Hewitt, Greenwood, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-defendant Como, Inc., appeals from the grant of summary judgment in favor of appellee-plaintiff Carson Square, Inc., (Carson Square) in an action to terminate Como's leasehold interest in Carson Square Shopping Center (shopping center). The designated facts relevant to this appeal are set forth below.

Shopping center is a strip mall located in Indianapolis, Indiana. Between 1975 and February 1993, Carson Partners owned the shopping center subject to a mortgage held by American Fletcher National Bank and Trust Company n/k/a Bank One, Indianapolis, NA (Bank One). Como is owner of a catering business known as Primo Catering and Banquet Hall (Primo).

In June 1990, Como and Carson Partners entered into a lease for a 20,0000 square foot space in the shopping center which was to house Primo. The lease was to be terminated on December 28, 1995. The lease was later amended to give Como two consecutive five-year options to renew. At the time the lease was entered into, the shopping center was in need of substantial repairs which Como agreed to assume responsibility for in exchange for an abatement of the $3,500.00 monthly rent by cost of repairs which would from time to time become necessary. Although not incorporated into the lease, this course of conduct was adhered to throughout the years without objection from either Carson Partners or Como.

After experiencing a series of financial difficulties, Carson Partners defaulted on the mortgage. Consequently, in February 1991, Bank One sought foreclosure on the shopping center. However, Como was neither listed as a party to the foreclosure action nor notified of its commencement. As such, Como continued to conduct substantial repairs to

the premises and to schedule events at Primo.

In February 1993, the trial court entered a judgment of foreclosure which was amended in August 1993. On August 3, 1993, Bank One assigned its mortgage and judgment of foreclosure to Carson Square. Carson Square purchased the shopping center at a sheriff's sale the following day. Later that day, Carson Square, by its president Edward Kopecky, visited Primo, claimed to be the new owner of the shopping center and demanded payment of the July and August rent. According to Como's general partner Matthew Iaria, it was at this time that Como first became aware of Carson Square's ownership of the shopping center. The next day Como paid to Carson Square the August rent which the latter accepted. Como remained in possession and continued to make repairs and schedule events at Primo.

Thereafter, a dispute arose between Carson Square and Como. Specifically, Carson Square demanded renegotiation of the lease, twice the scheduled rent and refused to recognize the 2 five-year options. Como refused the demands asserting the continued existence of the former lease.

In response, Carson Square initiated this action against Como on August 24, 1993. In its second amended complaint, Carson Square alleged *inter alia* that: the judgment of foreclosure extinguished Como's entire leasehold interest in the shopping center (Count I), acceptance of the August rent did not ratify the lease between Carson Partners and Como (Count II), Carson Square is entitled to repossess the leased premises (Count III), Carson Square has a right to strict foreclosure of the real estate (Count IV), Como is in breach of the lease (Count V), any options to renew agreed to between Como and Carson Partners are void (Count VI), and Como has failed to pay rents due (Count VII). Como filed a counterclaim and alleged Carson Square's breach of quiet enjoyment, asked for relief in quantum meruit, and also sought a declaratory judgment to affirm the

2 five-year options to renew. Both parties filed motions for summary judgment. The trial court granted summary judgment in favor of Carson Square on Counts I, II, III, and VII. This appeal ensued.

The sole restated issue on appeal is: whether the trial court erred in granting summary judgment in favor of Carson Square.

Review of a ruling on summary judgment requires this Court to implement the same standard used by the trial court. This Court must liberally construe all designated evidentiary matter in favor of the non-moving party and resolve any doubt against the moving party. Even if it appears that the non-moving party will not succeed at trial, summary judgment is inappropriate where material facts conflict or undisputed facts lead to conflicting inferences. Where material facts are not in dispute, the issue is the application of the law to the facts. *Fidelity Financial Services v. Sims* (1994), Ind.App., 630 N.E.2d 572, 574.

Raising a due process argument, Como claims the trial court's judgment of foreclosure was not applicable to it because it was not named as a party to the action. Carson Square on the other hand contends the foreclosure judgment did effectively eradicate Como's interest in the shopping center as Como's interest therein only extends to the interest of Carson Partners. As Carson Partners' interest was extinguished with the foreclosure, Carson Square argues, so is Como's leasehold.

A leasehold is a "property interest" for due process purposes.[1] *Bowlby v. NBD Bank* (1994), Ind.App., 640 N.E.2d 1095, 1098. In *Bowlby*, bank obtained a mortgage on a building owned by fee simple owner. The mortgage included all rents from leases of the building, including the lease held by tenant. The bank later foreclosed on the mortgage, and a receiver was appointed by the trial court to manage the property. After the trial court approved receiver's rejection of tenant's lease, tenant filed a motion to

---

1. State action exists here as the foreclosure was brought pursuant to IND.CODE § 32–8–16–6 (1988 Ed.). *See Wilson v. Board of the Indiana Employment Security Division* (1979), 270 Ind. 302, 385 N.E.2d 438, *cert. den.* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101 (1979) (element of state action not issue where injury brought pursuant to state statute).

correct errors alleging the order violated her due process rights by depriving her of real and personal property interests without notice or opportunity for a hearing. *Id.* at 1098. The trial court denied the motion.

■ On appeal this Court reversed. Relying on *Brown v. Brienen* (7th Cir.1983), 722 F.2d 360, the *Bowlby* Court listed three factors to consider in its due process analysis: (1) the importance of the interest deprived plaintiff, (2) the risk of erroneous deprivation because a particular procedural safeguard was not provided, and (3) the burden on the state of providing it. *Bowlby,* 640 N.E.2d at 1098. The *Bowlby* Court found all three factors to weigh in favor of tenant, thus, warranting due process protection including notice and an opportunity to be heard. *Id.* at 1100.

Following *Bowlby,* Como's leasehold is a "property interest" for due process analysis. Also, foreclosures, like the appointment of a receiver for a lessor in *Bowlby,* are subject to statutory regulation and enforcement by the courts and, thus, are not absolute. *See* IND. CODE § 32–8–16–1, et seq. Similarly, as in eminent domain proceedings, foreclosure in this manner neither permits the tenant an opportunity to respond to protect its rights nor at minimum, the necessary notice to mitigate its damages. *See Thomas v. Lauer* (1949), 227 Ind. 432, 86 N.E.2d 71 (state in eminent domain proceeding may not ignore rights of lessees in open possession and thereby foreclose possessory rights of tenant and forcibly oust and deprive tenant of interest without due process of law).

In the present case, Como had agreed with Carson Partners to make its own repairs on the premises in exchange for abatement of the rent. Throughout the lease, it spent in excess of $500,000.00 for improvements and repairs. Also, as a banquet hall and catering business, Como enters into contracts for the scheduling of events many months in advance. Believing its leasehold remained in tact and without objection from any party, Como continued to both make repairs and enter into binding contracts with third parties during foreclosure proceedings and thereafter. Foreclosing Como's leasehold without sufficient notice or opportunity to respond placed Como in the untenable position wherein it needlessly continued to incur expenses and to subject itself to danger of breach of contract actions by third parties. It further forced Como into the unfair situation where it was compelled to either renegotiate the lease with Carson Partners at twice the scheduled rent or face the consequences of immediate eviction.

Moreover, as in *Bowlby,* the burden to Bank One in joining Como in the foreclosure action was not overwhelming. In 1975, Bank One knew its mortgage attached to a shopping center. It is commonly known that a shopping center's continued existence is generally dependent upon rent proceeds from lease of space to businesses. Bank One was itself one such tenant but chose to except itself from the foreclosure action. Thus, when the mortgage was entered into in 1975, Bank One was aware there would be subsequent leaseholds to contend with in the event of future default and foreclosure of the mortgage. Additionally, at the time the foreclosure action was filed, Como was in physical possession of the premises. From this it is reasonable to conclude that Bank One knew or should have known Como was a tenant with an interest in the shopping center when it initiated foreclosure proceedings. Bank One could have easily joined Como as a party to the foreclosure action, thereby allowing it an opportunity to respond. As noted above, at minimum, notice of the foreclosure action would have allowed Como to take measures to protect its interests and to lessen its damages.

Guided by *Bowlby,* the above-mentioned due process factors weigh in Como's favor. As Como was denied due process by its exclusion from the foreclosure action, the foreclosure did not abolish Como's leasehold.

Carson Square claims that even if the foreclosure did not apply to invalidate Como's lease, the lease was properly terminated due to Como's default in failing to pay the July and August rent installments under the lease. The evidence does not suggest this to be the case. Section 5.02 of the lease provides, "[Como] shall pay to Landlord monthly [rental] installment[s] ... *on or before the first day of each ... calendar month ...*" as

payment for the rental period. (Emphasis added.) Carson Square did not obtain ownership of the shopping center until August 4, 1993, when it purchased the property at the sheriff's sale. As it was not the owner when either the July [2] or August rent accrued according to and under the lease, Carson Square was not entitled to either installment of rent. *See Watson v. Penn* (1886), 108 Ind. 21, 8 N.E. 636 (owner when rent falls due entitled to whole sum unless otherwise provided by contract). Thus, Carson Square cannot now rely on these events to justify termination of Como's leasehold. For the above-mentioned reasons, summary judgment granted in favor of Carson Square is in error. Accordingly, the judgment of the trial court is reversed.

Reversed.

GARRARD and FRIEDLANDER, JJ., concur.

---

**2.** Como paid the July rent to Carson Partners in August 1993. The delay was understood by both Carson Partners and Como to be the result of the latter waiting for invoices on the payment of repairs to deduct from the amount of rent.

David Gradison, general partner of Carson Partners, stated by affidavit that it did not consider Como to be either delinquent in rent nor in default of the lease.