## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this
Memorandum Decision shall not be regarded as
precedent or cited before any court except for the
purpose of establishing the defense of res judicata,
collateral estoppel, or the law of the case.



**FILED**

Sep 21 2016, 9:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Joel C. Wieneke
Brooklyn, Indiana

ATTORNEY FOR APPELLEE

Suzanne R. Siefferman Newcomb
Smith Amudsen
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Monique J. Hartley (Mansfield) and Mark J. Mansfield, <br><br> *Appellants- Plaintiffs,* <br><br> v. <br><br> Amity Reading, <br><br> *Appellee- Defendant.* | September 21, 2016 <br><br> Court of Appeals Case No. 67A04-1512-CC-2239 <br><br> Appeal from the Putnam Circuit Court. <br> The Honorable Phillip I. Adler, Special Judge. <br> Cause No. 67C01-1404-CC-138 |

**Friedlander, Senior Judge**

[1] Monique and Mark Mansfield (collectively referred to as "the Mansfields")
appeal the grant of summary judgment in favor of Amity Reading, and
judgment after a bench trial in favor of Reading on her counterclaims. The
Mansfields present the following restated issues for review:

1.  Whether the trial court erred in granting Reading's motion for summary judgment?

2.  Whether the trial court abused its discretion by denying Monique Mansfield's request for continuance?[1]

3.  Whether the trial court's comments and actions violated Monique Mansfield's right to due process?

4.  Whether the award of $12,000.00 in attorney's fees was unreasonable?

We affirm in part, reverse in part, and remand for further proceedings.

The facts of this case are as follows. On July 9, 2013, Reading signed a lease agreement to rent a two-unit residential property that was owned by the Mansfields and located on Franklin Street in Greencastle, Putnam County, Indiana. The term of the lease was from August 1, 2013 through July 31, 2014. Reading paid the Mansfields the first month's rent of $1,200.00 and a security deposit of $1,200.00. On July 26, 2013, Nationstar Mortgage, LLC, filed a foreclosure action against the Mansfields for the Franklin Street property.

Reading took possession of the property on August 1, 2013. When she arrived, she found attached to the door a foreclosure complaint and summons addressed to "Unknown Tenant." The complaint alleged the Mansfields were in default on the mortgage on the property and sought a decree of foreclosure and to have

---

[1] Although Mark Mansfield did not participate in the proceedings before the trial court, the court issued judgment against him and Monique. Mark also did not participate in this appeal. It appears Monique has appealed to protect both of their interests.

the property sold at sheriff's sale. Inside of the property, Reading found mold, mouse droppings, furniture and other belongings that had been left in the house, and a window that had both a broken pane and a broken sash. Reading discovered that neither of the two gas stoves within the property were in working order.

[4] Reading notified the Mansfields, through a property manager, of the problems with the property, but the problems were not rectified. Reading informed the Mansfields that she planned to vacate the property; and, she eventually did so. Reading asked that a prorated portion of the August rent, as well as the security deposit, be returned to her. Neither the rent payment nor the security deposit were returned.

[5] On February 26, 2014, the Putnam Circuit Court issued judgment against the Mansfields and foreclosed on the Franklin Street property. On January 7, 2015, the property was sold at sheriff's sale.

[6] On April 14, 2014, (after the foreclosure but before the sheriff's sale) the Mansfields filed a complaint for damages, alleging Reading did not fulfill her contractual obligation to lease the Franklin Street property for one year. The Mansfields sought $12,000.00 in damages, plus attorney's fees, "and all other relief proper." Appellants' App. pp. 13-14. On June 11, 2014, Reading filed an answer and counterclaim. She admitted she signed a one-year lease for the property, and that she vacated the property after paying one month's rent and the security deposit. She maintained however, she was constructively evicted

from the property because it was uninhabitable and because of the foreclosure proceedings. Reading raised as counterclaims 1) breach of implied warranty of habitability, 2) fraudulent inducement, 3) failure to return a pro rata share of the rent and the security deposit, and 4) conversion.

[7] On May 14, 2015, Reading served on the Mansfields interrogatories and requests for the production of documents. The Mansfields did not comply. On August 17, 2015, Reading filed with the trial court a motion to compel discovery, seeking an order directing the Mansfields to answer written discovery, make themselves available for deposition, and reimburse Reading for expenses she incurred from the Mansfields' delay in responding to discovery requests. The trial court issued an order granting Reading's motion on August 20, 2015. The Mansfields did not comply with the court's order.

[8] On July 30, 2015, Reading moved for summary judgment on the Mansfields' complaint, alleging she was entitled to judgment as a matter of law because the foreclosure and sheriff's sale transferred all rights related to the Franklin Street property to the purchaser and, therefore, precluded the Mansfields from making any claims against Reading for unpaid rent. On that same day, Reading filed a motion for attorney's fees, contending the Mansfields had not complied with discovery. The Mansfields filed a response in opposition to the motion for summary judgment, arguing Reading was not entitled to judgment as a matter of law because the law did not support her claim.

The trial court held a hearing on the motion for summary judgment on September 10, 2015. The Mansfields did not appear at the hearing. Following the hearing, the trial court took the summary judgment matter under advisement. On September 18, 2015, the trial court granted Reading's motion for summary judgment and dismissed the Mansfields' complaint with prejudice. The following day, Reading filed a motion for sanctions, seeking (among other things) attorney's fees for the Mansfields' failure to comply with discovery.

On October 9, 2015, the trial court conducted a hearing on Reading's counterclaims and request for attorney's fees. Monique Mansfield appeared telephonically and pro se. Mark Mansfield did not appear. At the onset of the hearing, Ms. Mansfield requested a continuance. Her request was denied.

On November 13, 2015, the trial court issued its order, finding the Mansfields breached the implied warranty of habitability, fraudulently induced Reading to sign the lease, and failed to return Reading's pro rata share of the rent and the security deposit. The trial court also awarded Reading damages and $12,000.00 in attorney's fees. This appeal follows. Additional facts will be provided as necessary.

*1.*

The Mansfields contend the trial court erred in granting Reading's motion for summary judgment. Reading maintained in her summary judgment motion that she was entitled to judgment as a matter of law because any rights the Mansfields had to recover rent from her were extinguished when the Franklin

Street property was sold at sheriff's sale and the sheriff's deed was recorded. In their response, the Mansfields argued Reading was not entitled to judgment as a matter of law because Indiana law does not support her claim. The Mansfields cited the "Mortgages" section of the Indiana Law Encyclopedia as follows: "In the absence of a provision in the mortgage to the contrary, the mortgagor, while lawfully in possession of the mortgaged premises, is entitled to the rents and profits of the mortgaged premises and may dispose of them in any manner so desired." 20 Ind. Law Encyc. Mortgages § 60 (2016). According to the Mansfields, they were entitled to unpaid rents that accrued before the property was sold at sheriff's sale because during that time, they were the lawful owners of the property.

[13] The parties present the same arguments on appeal. We find the trial court erred in granting summary judgment in favor of Reading because Reading was not entitled to judgment as a matter of law.

[14] We review a grant or denial of summary judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000 (Ind. 2014). We construe all facts and reasonable inferences to be drawn from those facts in favor of the nonmoving party. *Jacobs v. Hilliard*, 829 N.E.2d 629 (Ind. Ct. App. 2005), *trans. denied*. Summary judgment is appropriate only when the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.*; *see also* Ind. Trial Rule 56(C).

[15] While federal summary judgment practice allows a moving party to merely show the party carrying the burden of proof lacks evidence on a necessary element, Indiana's summary judgment standard establishes a higher bar for movants to clear. *Smith v. Taulman*, 20 N.E.3d 555 (Ind. Ct. App. 2014). A movant must affirmatively "negate an opponent's claim." *Hughley*, 15 N.E.3d at 1003 (quoting *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994)).

[16] "Summary judgment is a desirable tool to allow the trial court to dispose of cases where only legal issues exist. But it is also a 'blunt . . . instrument' by which the non-prevailing party is prevented from having his day in court." *Hughley*, 15 N.E.3d at 1003 (citations and some quotations omitted). "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Id.* at 1004.

[17] The material facts pertaining to Reading's summary judgment motion do not appear to be in dispute. Reading entered into a lease agreement with the Mansfields to rent the Franklin Street property from August 1, 2013, through July 31, 2014. Reading paid the Mansfields only one month's rent and a security deposit. The Franklin Street property was foreclosed upon on February 16, 2014. The Mansfields sued Reading for unpaid rent on April 14, 2014. The property was sold at sheriff's sale on January 7, 2015, and a sheriff's deed was recorded on January 8, 2015, conveying the property to Federal Home Loan Mortgage Corporation.

Under the lien theory, to which Indiana is unequivocally committed, the lender (the mortgagee) has no title to the land mortgaged. *Oldham v. Noble*, 117 Ind. App. 68, 66 N.E.2d 614 (1946). The right to possession, use and enjoyment of mortgaged property, as well as title, remains in the borrower (the mortgagor), unless otherwise specifically provided. *Id*. The mortgage is a mere security for the debt. *Id*.

Foreclosure is defined as "[a] legal proceeding to terminate a mortgagor's interest in property, instituted by the lender . . . either to gain title or to force a sale in order to satisfy the unpaid debt secured by the property." Black's Law Dictionary 762 (10th Ed. 2014); *Armstrong v. Keene*, 861 N.E.2d 1198, 1201, n.4 (Ind. Ct. App. 2007), *trans. denied*. Foreclosure is necessary to transfer legal title from the borrower to the lender, who must purchase the property at decretal sale if he wishes to acquire such title. *Oldham*, 66 N.E.2d 614. Every defendant in a mortgage foreclosure action has the right to redeem its property by paying off the amount due at any time *before* the property is sold at a sheriff's sale. Ind. Code § 32-29-7-7 (West/Westlaw 2002).

A borrower, while lawfully in possession of the mortgaged premises, is entitled to the rents and profits of the mortgaged premises. 20 Ind. Law Encyc. Mortgages § 60; *see Booram v. Day*, 216 Ind. 503, 25 N.E.2d 329 (1940) (borrower had right to have proceeds of property applied to property's maintenance and prior liens); *see also*, *Como, Inc. v. Carson Square, Inc.*, 648 N.E.2d 1247 (Ind. Ct. App. 1995) (as Carson Square was not the owner of shopping center when July and August rent accrued, it was not entitled to the

rent from tenant). The borrower of real estate has a right to the rents and profits so long as he remains in possession. *See White v. Redenbaugh*, 41 Ind. App. 580, 585, 82 N.E. 110, 112 (1907) ("No rule of law is plainer or better understood than that the mortgagor of real estate has a right to the rents and profits so long as he remains in possession."). The owner of a property *when rent falls due* is entitled to the entire sum, unless otherwise provided by contract. *See Watson v. Penn*, 108 Ind. 21, 8 N.E. 636 (1886).

[21] It is not in dispute the Mansfields retained ownership of the Franklin Street property until January 7, 2015, the date the sheriff's deed conveyed the Franklin Street property to Federal Home Loan Mortgage Corporation. Appellants' App. p. 77. Neither is it in dispute that the lease Reading signed was for the period from August 1, 2013, through July 31, 2014; the Mansfields owned the property during said time period; and, Reading agreed to pay $1,200.00 per month during the lease period.

[22] Thus, the Mansfields owned the Franklin Street property when the rent under the lease fell due. We find the trial court erred in determining as a matter of law the Mansfields were not entitled to the unpaid rent and erred in granting summary judgment in favor of Reading and dismissing the Mansfields' complaint. Whether the Mansfields can collect all, part, or none of the unpaid

rent is a question that may hinge on genuine issues of material fact, but this question is not before us on appeal.[2]

## 2.

[23] The Mansfields next argue the trial court abused its discretion when it denied Monique Mansfield's motion for continuance of the October 9, 2015 hearing on Reading's counterclaims and request for attorney's fees. In their brief, the Mansfields maintain that Ms. Mansfield "offered good cause for [a continuance] but that the [trial court] judge refused to give [her request] due consideration because he had lost all patience with [her]." Appellants' Br. p. 15. Reading contends Ms. Mansfield did not offer good cause but instead offered excuses, and that Ms. Mansfield's request for continuance was a "conscious attempt to game the system." Appellee's Br. p. 18.

[24] The facts related to this issue are as follows. On August 21, 2015, the Mansfields' attorney sent a letter to Ms. Mansfield stating in part:

> My staff has attempted to contact you about [your failure to cooperate with discovery] and you have refused to speak with them. They have requested contact information for the co-plaintiff, Mark Mansfield[,] and you have refused to provide it. . . .
>
> You must cooperate with me to proceed with your case. . . .

---

[2] Genuine issues of material fact may very well exist regarding whether the Mansfields are entitled to *collect* the unpaid rent in light of Reading's counterclaims of constructive eviction and fraudulent inducement. But those issues were not raised in the summary judgment proceeding and, therefore, are not before us on appeal.

> In the event [you fail to answer the interrogatories] within five (5) days[,] I may consider withdrawing my representation of you. . . .
>
> It is important to retain the services of an attorney, [sic] without an attorney you may waive valuable legal rights. You currently have a bench trial set on October 9, 2015 at 9 A.M.

Appellants' App. p. 96. The Mansfields' attorney filed a motion to withdraw from the case on August 27, 2015, alleging the Mansfields had failed to communicate with him. The motion was granted on September 2, 2015.

On the day of the hearing, when the trial court asked Ms. Mansfield if she was ready to proceed, she replied, "I have been advised to ask for continuance based on the circumstances . . . . The circumstances are that my attorney . . . was negligent in my case; he failed to communicate with me . . ." October 9, 2015 Tr. p. 22. Ms. Mansfield maintained that any correspondence her attorney allegedly sent to her was not received, and that her attorney "didn't pick up the phone" and "didn't respond to e-mails." *Id*. at 25.

[25] The following exchange took place during the hearing between the court and Ms. Mansfield:

> THE COURT: I find that very hard to believe [that your attorney was not communicating with you]. [Your attorney] told me his correspondence to you keeps, kept coming back. . . . Ma'am, I'm not gonna argue with you. You have done nothing that the Court has ordered you to do. That's not my fault, it's not, [sic] it's not the other lady's fault here uh, Amity Reading. We're gonna have a trial today. . . .

MS. MANSFIELD: [A]ll I'm asking for is a continuance so I can get an attorney . . . .

THE COURT: Ma'am, you're gonna be throwing good money at, you're gonna be throwing good money after bad I'm afraid. There's no lawyer's gonna take this case at the last, you know, in the, in the eleventh (11th) hour. I'm not gonna have these people keep coming back here. Uh, Amity Reading's here – . . . her lawyer is here. She keeps incurring – . . . ma'am, you gotta realize, you're the one that started this. You're the one that filed this lawsuit.

MS. MANSFIELD: I can show you documentation to, from [my attorney] where I have (indiscernible) requirement, and he is the one who has been doing this on his own. That's what I'm trying to tell you. . . .

THE COURT: That, that's between you and [your attorney]. I could care less about that. My point is, we're gonna have a trial today. If you want to talk to [Ms. Reading's counsel] about maybe getting this case settled in, in a reasonable manner, that's fine. If you don't, we're gonna go forward with it. I'm not gonna handle this case any longer. This case has been set for trial for a very long time.

[26] *Id*. at 25-28. We find the trial court did not abuse its discretion by denying Ms. Mansfield's request to continue the hearing to hire a new attorney.

[27] Pursuant to our Indiana Trial Rules, a trial court has discretion to postpone or continue the trial when a motion to continue a trial is filed by a party. *See* Ind. Trial Rule 53.5. "[A] trial court shall grant a continuance upon motion *and* 'a

showing of good cause established by affidavit or other evidence.'" *Gunashekar v. Grose,* 915 N.E.2d 953, 955 (Ind. 2009) (quoting Ind. Trial Rule 53.5) (emphasis added). "A trial court's decision to grant or deny a motion to continue a trial date is reviewed for an abuse of discretion." *Gunashekar,* 915 N.E.2d at 955. A trial court abuses its discretion when it reaches a conclusion which is clearly against the logic and effect of the facts or the reasonable and probable deductions which may be drawn therefrom. *Hess v. Hess,* 679 N.E.2d 153 (Ind. Ct. App. 1997). "[T]here is a strong presumption the trial court properly exercised its discretion." *Gunashekar,* 915 N.E.2d at 955.

[28] "A denial of a motion for continuance is [considered to be an] abuse of discretion only if the movant demonstrates good cause for granting it." *Id.* ". . . [N]o abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial." *Riggin v. Rea Riggin & Sons, Inc.,* 738 N.E.2d 292, 311 (Ind. Ct. App. 2000). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request was denied." *J.P. v. G.M.*, 14 N.E.3d 786, 790 (Ind. Ct. App. 2014) (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 850, 11 L. Ed. 2d 921 (1964), *reh'g denied* ).

[29] "[A]mong the things to be considered on appeal from the denial of a motion for continuance, we must consider whether the denial of a continuance resulted in the deprivation of counsel at a crucial stage in the proceedings." *Hess,* 679

N.E.2d at 154 (citing *Homehealth, Inc. v. Heritage Mut. Ins. Co.,* 662 N.E.2d 195, 198 (Ind. Ct. App. 1996), *trans. denied*). The withdrawal of an attorney does not automatically entitle a party to a continuance. *Thompson v. Thompson*, 811 N.E.2d 888 (Ind. Ct. App. 2004), *trans. denied*.

[30]  Continuances to allow time for additional preparation are generally disfavored. *Williams v. State,* 681 N.E.2d 195 (Ind. 1997); s*ee also Clodfelder v. Walker,* 234 Ind. 219, 125 N.E.2d 799 (1955) (explaining that a motion for continuance should be made at the earliest practicable time after knowledge of the necessity for a continuance). Furthermore, "[a] continuance requested for the first time on the morning of trial is not favored." *Lewis v. State,* 512 N.E.2d 1092, 1094 (Ind. 1987).

[31]  The Mansfields' attorney sent a letter on August 21, 2015, informing the Mansfields he might withdraw his representation. Less than a week later, counsel filed his motion to withdraw. The motion was granted on September 2, 2015, some six weeks before the scheduled hearing date. Ms. Mansfield did not file a motion for continuance prior to the date of the hearing. Instead, she requested the continuance at the start of the hearing.

[32]  Ms. Mansfield provided no evidence to the trial court that she attempted to hire new counsel in those six weeks preceding the hearing, aside from her testimony to such. Also, Ms. Mansfield has not provided any particularized information from which we could conclude that she was prejudiced by the denial of the continuance.

The trial court was in the best position to determine Ms. Mansfield's motivations for requesting the continuance. The court was aware of the difficulties Ms. Mansfield's attorney encountered in trying to communicate with her. The court knew how long the hearing had been scheduled. The court was familiar with the issues of the case and was able to determine the relative complexity or simplicity of the issues before it. *See Gunashekar*, 915 N.E.2d 953 (in determining whether to grant a continuance, trial court was entitled to consider how long the trial had been scheduled, the lack of explanation for eight weeks of apparent inaction, the relative simplicity of a three-witness bench trial, and the potential that request was a conscious gaming of the system). The trial court determined Ms. Mansfield's request for continuance should not be granted. The court did not abuse its discretion in doing so.

### 3.

[33] The Mansfields argue the trial court violated Ms. Mansfield's due process rights at the October 9, 2015 hearing. According to the Mansfields, the trial court made comments that demonstrated bias and lack of impartiality; the court prevented Ms. Mansfield from objecting to testimony; and, the court admitted exhibits into evidence without giving Ms. Mansfield an opportunity to object. Reading maintains the trial court's comments and actions might have shown impatience and frustration, but do not rise to a level of prejudice, bias, or judicial impropriety.

[34] Trial judges are afforded ample latitude to run a courtroom and maintain discipline and control of the trial. *Timberlake v. State*, 690 N.E.2d 243 (Ind.

1997).  We even tolerate a "crusty" demeanor towards litigants so long as it is applied even-handedly.  *Harrington v. State,* 584 N.E.2d 558, 562 (Ind. 1992) (quoting *Rowe v. State,* 539 N.E.2d 474, 477 (Ind. 1989)).  Yet a "trial before an impartial judge is an essential element of due process."  *Everling v. State,* 929 N.E.2d 1281, 1287 (Ind. 2010) (citing *Caperton v. A.T. Massey Coal Co., Inc.,* 556 U.S. 868, 876, 129 S.Ct. 2252, 2259, 173 L. Ed. 2d 1208 (2009)).

[35]  Recognizing the well-settled due process right to an impartial court as necessary to a fair proceeding, we have found fundamental error when trial judges' comments, demeanor, or conduct indicated bias.  *In re J.K.*, 30 N.E.3d 695 (Ind. 2015).  We must consider the "cumulative effect" of a court's comments, because even relatively minor remarks can compound into prejudice.  *Id.* at 700.

[36]  Our Supreme Court has "recognize[d] that judges are not immune from the emotional effect of the cases they hear" . . . and that "[r]ecognizing that burden, we will not race to judgment over isolated inappropriate or impatient comments that do not cause prejudice to the parties. . . ."  *In re J.K.*, 30 N.E.3d 695, 700, n.1.  To prevail on a claim of impartiality, a defendant must show that the trial judge's action and demeanor crossed the barrier of impartiality and prejudiced the defendant's case.  *Timberlake*, 690 N.E.2d 243.

[37]  At the beginning of the October 9, 2015 hearing, Ms. Mansfield asked for a continuance.  The court displayed some impatience and frustration as it questioned Ms. Mansfield about her reason for seeking a continuance,

evidenced by the exchange that took place between the court and Ms. Mansfield. *Supra; see also* October 9, 2015 Tr. pp. 25-28. Later in the hearing, the trial court called Ms. Mansfield by the wrong name. When she corrected the court, the court responded, "Whatever." *Id*. at 33. The court also made the comment, "I want to get this case over with while I'm still young." *Id*. at 35. When Ms. Mansfield asked the court if the comment was necessary, the court responded, "Look, you have not done anything this Court ordered you to do in the past, so I don't have a whole lot of sympathy for you. You should be here in person. I'm allowing this to go forward on the telephone, which most judges would not allow, but I am." *Id*. at 36. At the end of the hearing, the trial court remarked, "This is all coming back to me why I, why I retired." *Id*. at 108.

[38] While the court's comments toward Ms. Mansfield certainly were curmudgeonly, we do not find the comments and exchanges showed impartiality on the trial court's part. Also, Ms. Mansfield has not shown how she was prejudiced by the court's comments.

[39] We now turn to the trial court's comments and actions pertaining to Ms. Mansfield's right to offer objections during the hearing and to object to the admission of evidence. Here, we express concern.

[40] During the hearing, Reading's counsel offered into evidence twelve exhibits. All of the exhibits were admitted without objection; but, it does not appear from the record that Ms. Mansfield was given time to lodge objections. During direct examination of Reading by her counsel, Ms. Mansfield attempted to

lodge an objection because she believed Reading's counsel was asking a question that referred back to the summary judgment issue. The following exchange took place:

> Q [by Reading's Counsel] [Ms. Reading,] [c]ould you please tell the Court the condition of the property at the time that you took possession?
>
> A  Uh, there were some problems with the property. Um –
>
> MS. MANSFIELD:  Objection sir. I thought this was a hearing to a counterclaim.  What does the summary judgment have to do with anything?  Uh, I, I'm feeling like this has already been heard.
>
> THE COURT:  The counterclaim has not been heard ma'am.
>
> [READING'S COUNSEL]:  The counterclaim's for – if it might help – are breach of the implied warrant of habitability; fraudulent inducement; failure to re (sic.), refund the security deposit and a prorated share of the rents paid; and –
>
> MS. MANSFIELD:  And the witnesses that can explain that are not present –
>
> [READING'S COUNSEL]:  – and conversion.
>
> MS. MANSFIELD:  – so I object.  I –
>
> THE COURT:  You can object all you want but she's a witness and you can't object to her testifying.  Go ahead.

*Id.* at 38-39.  Ms. Mansfield tried to lodge a second objection, and the following exchange occurred:

> Q [by Reading's Counsel]  Okay.  So Ms. Reading, you started to say that there were problems with the property.  Could you please um, outline for us what the problems were that you encountered?

A: So the, the first problem was that on August First (1st) of Twenty-Thirteen (2013) uh, when I showed up to the property, there was attached to the door a Summons naming me as the unnamed tenants in an action in which the property was being foreclosed upon –

MS. MANSFIELD: Objection sir. Uh, Amity [Reading], Amity [Reading] –

THE COURT: Ma'am – . . .

THE COURT: – ma'am — you do not interrupt until she finishes her sentence. If you keep doing this, I'm gonna hang up [the telephone].

MS. MANSFIELD: I don't know the rules sir.

THE COURT: Yeah, well that's the rule. Go ahead.

*Id*. at 39. After direct and cross-examination of Reading had concluded, Ms. Mansfield attempted to "[go] on the record again to state that [she] asked for a continuance, and [that] the Judge did not grant a continuance." *Id*. at 71. The following exchange took place:

THE COURT: Yeah, yeah. That's on the record several times. Ask your next question.

MS. MANSFIELD: I'm sorry sir. I thought we just went into trial for the first time, and so I had not put that on record. You told me I could not speak until Amity [Reading] had finished. So I believe this is the first time I am speaking on the record.

THE COURT: That's not true, but, it doesn't matter. Ask your next question.

*Id*.

[41] Questions can be raised here as to whether the trial court's comments placed a "chilling effect" on Ms. Mansfield's willingness to object during the hearing. ". . . [I]ntimidated participants in the trial may be unable to perform their proper function – a cowed defense counsel fails to object to inadmissible evidence – a rattled witness becomes incoherent." *Dixon v. State*, 154 Ind. App. 603, 620, 290 N.E.2d 731, 741 (1972). Notwithstanding the foregoing, Ms. Mansfield carries the burden of showing how the court's comments and actions amounted to impartiality and, ultimately, prejudiced her. *See Timberlake*, 690 N.E.2d 243; *see also*, *Gray v. State*, 256 Ind. 342, 268 N.E.2d 745 (1971) (because defendant failed to demonstrate how trial judge's remarks prejudiced his case, the reviewing court found no basis for reversal). She has not done so.

[42] During the hearing, Ms. Mansfield directly examined and cross-examined witnesses. The court allowed Ms. Mansfield to call Reading's counsel as a witness and to present a closing argument. At one point during the hearing, when Ms. Mansfield so inquired, the trial court took time to explain to Ms. Mansfield her rights regarding seeking an appeal. Throughout the proceeding, the court asked if Ms. Mansfield had other questions or if there was "anything else [she wanted] to talk about." October 9, 2015 Tr. p. 103. Although Ms. Mansfield contends she was not allowed to object to the admission of the exhibits, she presents no argument that the exhibits admitted into evidence should have been excluded. Under these circumstances, we find that Ms. Mansfield has not shown prejudice; her due process rights were not violated; and, she received an impartial hearing.

Nevertheless, we note:

> When a trial judge indulges in injudicious behavior and intemperate language, it is only natural that a losing litigant leaves the court with a deep-rooted feeling that he or she has been denied a fair and impartial hearing. A trial judge can and should, by a judicious manner coupled with the use of temperate language, avoid lending substance to such a feeling.

*Dixon*, 290 N.E.2d at 741.

### 4.

The Mansfields contend the award of $12,000.00 in attorney's fees is excessive and unreasonable. The facts related to this issue are as follows.

On September 2, 2015, Reading submitted a "Petition for Attorney Fees on Motion to Compel" requesting attorney's fees in the amount of $798.00 for costs associated with compelling discovery. On September 19, 2015, Reading filed a "Motion for Sanctions and Attorney Fees" seeking sanctions for the Mansfields' failure to comply with discovery. At the October 9, 2015 hearing, Reading's counsel had Reading identify Exhibit 13, which consisted of her counsel's invoices associated with this case. Counsel, however, failed to move to have the exhibit admitted into evidence. Following the hearing, the trial court issued its November 13, 2015 order and awarded Reading (among other things) "reasonable attorney fees of $12,000.00 allowed pursuant to [Indiana Code sections 32-31-8-5 (failure to deliver property in a safe, clean and habitable condition), 32-31-8-6 (failure to remedy condition on property after

notice is provided), and 32-31-3-12 (return of security deposit).]" Appellants' App. p. 123.[3]

[46] The Mansfields maintain an award of $12,000.00 for attorney's fees is unreasonable "considering the [legal] work that was done to rebut [the Mansfields'] claims . . . [and] to advance Reading's [counterclaims]." Appellants' Br. p. 21. In support of Reading's argument that "[t]he record contains considerable evidence from which the trial court could calculate a reasonable attorney fee," Reading points this court to sections of the transcript and appendix that, according to Reading, show the efforts counsel put forth in Reading's case. Appellee's Br. p. 28.

[47] Initially, we must address the Mansfields' motion to strike Exhibit 13 from the Volume of Exhibits prepared for this appeal. The Mansfields allege the exhibit was not admitted into evidence at the October 9, 2015 hearing and is not properly before us. We agree Exhibit 13 was never admitted and, therefore, cannot be considered. *See Cochran v. Rodenbarger,* 736 N.E.2d 1279 (Ind. Ct. App. 2000) (evidence must be admitted into evidence in order to be considered). By separate order issued contemporaneously with this opinion, we hereby grant the Mansfields' motion to strike Exhibit 13.

---

[3] If a tenant brings suit under Indiana Code section 32-31-8-6, and is successful, the tenant may recover attorney's fees (among other damages and costs). *See* Ind. Code § 32-31-8-6(d) (West/Westlaw 2002). If a tenant proves the landlord failed to comply with the security deposits statute, the tenant may recover reasonable attorney's fees. *See* Ind. Code § 32-31-3-12(b) (West/Westlaw 2002).

[48] We review a trial court's award of attorney's fees, and the amount of any such award, for an abuse of discretion. *Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281 (Ind. Ct. App. 2004) (citing *Malachowski v. Bank One, Indpls., N.A.*, 682 N.E.2d 530 (Ind. 1997)). "An abuse of discretion occurs when the trial court's award is clearly against the logic and effect of the facts and circumstances before the court." *Daimler Chrysler Corp.*, 814 N.E.2d at 286-87. "An award of attorney's fees will be reversed on appeal as excessive only where an abuse of the trial court's discretion is apparent on the face of the record." *Id.* at 287 (citation omitted). In determining a reasonable amount of attorney's fees, consideration should be given to the nature and difficulty of the litigation; the time, skill, and effort involved; the fee customarily charged for similar legal services; the amount involved; the time limitations imposed by the circumstances; and, the result achieved in the litigation. *See In re Eiteljorg*, 951 N.E.2d 565 (Ind. Ct. App. 2011), *trans. denied*; *see also, Zebrowski & Assocs., Inc. v. City of Indpls., By & Through its Bd. of Dirs. for Utils. of its Dep't of Pub. Utils.*, 457 N.E.2d 259 (Ind. Ct. App. 1983).

[49] We first note that the amount of the attorney's fee award to Reading is not inconsequential. Where the amount of the fee is not inconsequential, there must be objective evidence of the nature of the legal services and the reasonableness of the fee. *Stewart v. TT Commercial One, LLC*, 911 N.E.2d 51 (Ind. Ct. App. 2009), *trans. denied*.

[50] Without Exhibit 13, the evidence left with respect to the calculation of reasonable attorney's fees was as follows: Reading's September 2, 2015 Petition

for Attorney Fees on Motion to Compel and accompanying affidavit from Reading's counsel; Reading's Motion for Sanctions and Attorney Fees; and, the trial court's general knowledge of the challenges Reading's counsel faced regarding attempts to contact the Mansfields both before and after their counsel withdrew, as well as the age of the case. In the Petition for Attorney Fees, Reading asked the trial court to order the Mansfields to pay $798.00 in attorney's fees. In the accompanying affidavit, Reading's counsel attested she charged an hourly rate of $190.00, and she performed services totaling $798.00 due to the Mansfields' failure to cooperate with the discovery process. Counsel also included an itemization of her billable hours and a description of the services performed. In her Motion for Sanctions and Attorney Fees, Reading asked the trial court to (among other things) order the Mansfields to reimburse her for attorney's fees incurred as a result of the Mansfields' failure to cooperate with discovery – "including counsel's time spent investigating their whereabouts in an effort [to] ensure they were served with documents filed since their attorney withdrew his appearance . . . ." Appellants' App. p. 116. The motion does not contain an affidavit and provides no information about hours spent, hourly rates, or services performed.

[51] With only the two pleadings and the affidavit properly before the trial court and us, we agree with the Mansfields that the award of attorney's fees in the amount of $12,000.00 is unreasonable. While the trial court may consider a number of factors in determining the reasonableness of attorney fees, this Court has noted that hours worked and the rate charged are a common starting point. *Cavallo v.*

*Allied Physicians of Michiana, LLC*, 42 N.E.3d 995 (Ind. Ct. App. 2015). Here, the affidavit submitted by Reading's counsel supports an award of no more than $798.00 in attorney's fees. We, therefore, reverse the trial court's award of $12,000.00 in attorney's fees, with regard to the amount, and remand this issue to the trial court to determine reasonable attorney's fees. *See*, *e.g.*, *Fortner v. Farm Valley-Applewood Apartments,* 898 N.E.2d 393, 400 (Ind. Ct. App. 2008) (noting that the record did not "establish[ ] the number of hours that counsel . . . spent on the case or the hourly rate that was charged," and concluding the record was insufficient to determine the reasonableness of the requested fees, and remanding to the trial court to conduct a hearing to determine the reasonableness of the fees); *see also Loudermilk v. Casey,* 441 N.E.2d 1379, 1387–1388 (Ind. Ct. App. 1982) (the court noted that attorney's affidavit did not specifically state what services his firm performed and concluded that "[w]ithout more information about the services provided by the attorneys and the customary charges for such services, the court cannot decide what charges are reasonable"); *U.S. Aircraft Fin., Inc. v. Jankovich,* 407 N.E.2d 287, 295 (Ind. Ct. App. 1980) ("When counsel does not present evidence as to the hours expended in behalf of his or her client and perhaps out-of-pocket expenses, the risk is then taken that a subsequent award of attorney's fees may be considered . . . excessive since the record may not indicate any justification for the amount awarded."); *Kahn v. Cundiff,* 533 N.E.2d 164 (Ind. Ct. App. 1989) (award of $8,246.65 in attorney's fees (not a small amount) was unreasonable because (among other things) affidavits failed to provide proper basis for award, and

matter was remanded for hearing as to reasonable attorney's fees), *summarily aff'd by* 543 N.E.2d 627 (Ind. 1989).

## 5.

Finally, Reading requests that we award her appellate attorney's fees for work her attorney completed in this appeal, if she succeeds on appeal. Indiana Code sections 32-31-8-6 and 32-31-3-12 both provide that if a tenant prevails in a suit brought under the statutes, the tenant may recover reasonable attorney's fees. This includes reasonable appellate attorney's fees. *See, e.g.*, *Hill v. Davis*, 850 N.E.2d 993 (Ind. Ct. App. 2006) (this Court found the language of Indiana Code section 32-31-3-12(b) broad enough to encompass appellate attorney's fees).

This Court already has determined that the matter of reasonable attorney's fees should be remanded for further proceedings. Said proceedings also would include the matter of appellate attorney's fees.

Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings.

Kirsch, J., concurs.

Baker, J., dissenting in part, concurring in result in part, and concurring.

| | |
|---|---|
| Monique J. Hartley (Mansfield) and Mark J. Mansfield, *Appellants-Defendants,* | Court of Appeals Case No. 67A04-1512-CC-2239 |
| v. | |
| Amity Reading, *Appellee-Plaintiff.* | |

**Baker, Judge, dissenting in part, concurring in result in part, and concurring.**

I respectfully dissent from the majority's decision to reverse the grant of summary judgment in favor of Reading and remand for trial. The Mansfields have not appealed the finding in favor of Reading on her counterclaims. In other words, the findings that the Mansfields breached the implied warranty of habitability, fraudulently induced Reading to sign the lease, and failed to return Reading's pro rata share of the rent and security deposit are law of the case. Either of the first two findings would permit Reading to terminate the lease,

necessarily meaning that the Mansfields' complaint against her for unpaid rent must fail. Therefore, I believe that their appeal of the summary judgment ruling is moot and I would not address it at all, much less reverse and remand.

[56] Secondly, while I concur with the result reached by my colleagues regarding the trial court's comments to Ms. Mansfield, I part ways from their implicit criticism, albeit gentle, of the trial court. In my view, the behavior of Ms. Mansfield throughout these proceedings would have challenged and frustrated the very best of our judiciary. I believe that the trial court managed its frustration admirably. Furthermore, Ms. Mansfield's arguments in this regard relate to the counterclaim hearing. Again, she has not appealed the trial court's ruling on Reading's counterclaims. Therefore, I do not believe that this issue needs to or should be addressed.

[57] Finally, I am compelled to concur with my colleagues on the issue of Reading's attorney's fees, though I note that counsel's oversight likely happened out of an understandable desire to put this litigation behind her as quickly as possible. Nevertheless, I agree that there is insufficient evidence in the record supporting the fee award.

[58] In all other respects, I fully concur with the majority.